UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| ACF 2006 CORP., | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:13-cv-01286-TWP-DML |
| | ) | |
| WILLIAM F. CONOUR, | ) | |
| CONOUR LAW FIRM, LLC, | ) | |
| MARK C. LADENDORF, | ) | |
| ATTORNEY AT LAW, P.C., | ) | |
| TIMOTHY F. DEVEREUX, | ) | |
| COHEN & MALAD, LLP, and | ) | |
| JEFFREY A. HAMMOND, | ) | |
| Defendants. | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| DAVID L. BEALS, SR., LORETTA | ) | |
| BEALS, AND KRISTEN BEALS by | ) | |
| her guardians DAVID L. BEALS, SR. | ) | |
| and LORETTA BEALS, SARA J. | ) | |
| SKELTON (MASTERSON), | ) | |
| individually and as Personal | ) | |
| Representative of the Estate of | ) | |
| MICHAEL CONDON AND ZACKERY | ) | |
| CONDON, | ) | |
| Plaintiffs/Intervenors. | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| ACF 2006 Corp., | ) | |
| WILLIAM F. CONOUR, CONOUR | ) | |
| LAW FIRM, LLC, MARK C. | ) | |
| LADENDORF, ATTORNEY AT | ) | |
| LAW, P.C., TIMOTHY F. | ) | |
| DEVEREUX, COHEN & MALAD, | ) | |
| LLP, and JEFFREY A. HAMMOND | ) | |
| Defendants, | ) | |

**DEFENDANTS MARK C. LANDENDORF, ATTORNEY AT LAW, P.C., AND
TIMOTHY F. DEVEREUX'S PROPOSED FINDINGS OF FACT**

COME NOW the Defendants Mark C. Ladendorf, Attorney At Law, P.C., and Timothy F. Devereux (herein after "LADENDORF & DEVEREUX"), by counsel, and submit their Proposed Findings of Fact and Conclusions of Law.

## I.      FINDINGS OF FACT

1.      At all times relevant to this litigation, William F. Conour ("Conour") was the sole owner and shareholder of the Conour Law Firm (CONOUR FIRM").

2.      From February 2008 until December 2011, Timothy F. Devereux ("DEVEREUX") was employed as an Associate Attorney by the CONOUR FIRM.

3.      On December 22, 2011, DEVEREUX resigned his employment from the CONOUR FIRM due to the CONOUR FIRM's refusal to remain current on its financial obligations, which failure was significantly impairing DEVEREUX's ability to prosecute the personal injury cases in question.

4.      DEVEREUX never possessed any ownership interest in the CONOUR FIRM.

5.      Upon resigning from the CONOUR FIRM, DEVEREUX joined Mark C. Ladendorf, Attorney At Law, P.C. d/b/a/ Ladendorf & Ladendorf ("LADENDORF") as an Associate Attorney.

6.      Following DEVEREUX's resignation from the CONOUR FIRM, DEVEREUX was contacted by the Federal Bureau of Investigation ("FBI") and DEVEREUX learned that CONOUR and the CONOUR FIRM were being investigated for mishandling client settlement proceeds that were to have been placed in annuities for the benefit of the injured clients.

7.      Following his resignation from the CONOUR FIRM, numerous clients of the CONOUR FIRM expressed their interest to have DEVEREUX continue to represent them through his new employer, LADENDORF.

8.      Approximately 21 clients elected to have DEVEREUX and LADENDORF represent them on their personal injury cases (the "SUBJECT CASES").

9.      CONOUR and the CONOUR FIRM were advised in writing as to each client who chose to leave the CONOUR FIRM and be represented by DEVEREUX and LADENDORF.

10.

Shortly thereafter, a federal Criminal Complaint and a supporting Affidavit were filed on April 27, 2012 in the case of <u>U.S. v. William F. Conour</u>, Case No. 1:12-mj-0288, in the U.S. District Court of the Southern District of Indiana.   There, CONOUR was charged with violating 18 U.S.C. § 1343 as follows:

> The defendant devised a scheme to defraud, and to obtain money by means of materially false statements and fraudulent pretenses from, clients of his legal practice and others, and on October 6, 2011 for the purpose of executing the scheme, the defendant caused to be transmitted by means of wire communication in interstate commerce a facsimile transmission from Indianapolis, Indiana to Zurich American Insurance in the State of New Jersey.

11.      After being criminally charged in <u>United States of America vs. William F. Conour</u>, Case No. 1:12-mj-0288, disciplinary charges were filed against CONOUR by the Indiana Supreme Court's Disciplinary Commission.   In response to those disciplinary charges, CONOUR resigned from the practice of law in Indiana by tendering his Affidavit of Resignation in which he admitted that the material facts alleged in the criminal complaint filed against him were true.

12.      CONOUR plead guilty to the criminal charges filed in <u>United States of America vs. William F. Conour</u>, Case No. 1:12-mj-0288.

13.      On July 15, 2013, the federal court in the pending criminal case against CONOUR held a hearing on CONOUR's guilty plea during which CONOUR was placed under oath and he admitted that he had knowingly devised and participated in a scheme to defraud and

to obtain money and funds from his clients and others by means of materially false and fraudulent pretenses, representations and promises.

14.     While under oath, CONOUR admitted to misappropriating and unlawfully converting more than $4,500,000.00 belonging to more than 25 clients.

15.      CONOUR testified that as part of that scheme, he withheld material information from clients regarding the receipt of their settlement funds and how CONOUR was going to use those funds.

16.     Federal Judge Richard Young went through the Stipulation of Facts with CONOUR and CONOUR admitted that those facts were true.

17.      Following the entry of his guilty plea in in the federal criminal case of United States of America vs. William F. Conour, Case No. 1:12-mj-00288-DML-1, CONOUR was sentenced to ten (10) years in federal prison and he is not scheduled to be released from prison until 2022.

18.     In addition, the Federal Court entered its Judgment in the criminal case which included a specific order of restitution in the amount of $6,530,226.32 and identified 31 separate victims of CONOUR.

19.     Upon being advised of each client's decision to leave the CONOUR FIRM and be represented by DEVEREUX and LADENDORF, DEVEREUX and LADENDORF took possession of 21 subject personal injury case files.

20.     All of the 21 cases were handled on a contingent fee basis whereby case expenses would be advanced by the law firm handling the case and those case expenses would be recovered out of any settlement or judgment obtained in each given case.

21.     As these were contingent fee cases, no attorney fees would be earned unless the cases were successfully concluded by settlement or judgment.

22.     No written or verbal agreement was ever entered into between CONOUR and DEVEREUX/LADENDORF regarding the transfer of the SUBJECT CASES.

23.     The clients in each of the SUBJECT CASES terminated their attorney-client relationship with CONOUR voluntarily after being advised of their absolute right to have counsel of their choosing.

24.     Many of the SUBJECT CASES elected to be represented by DEVEREUX and LADENDORF immediately upon learning that DEVEREUX had terminated his employment with the CONOUR FIRM and others elected to terminate their attorney client relationship when they learned of the criminal charges filed against CONOUR.

25.     On more than one occasion, DEVEREUX and LADENDORF were required to obtain Court Orders and enlist the assistance of the Hamilton County Sheriff's Office to forcibly enter the offices of the CONOUR FIRM to take possession of case files involving some of the SUBJECT CASES.

26.     Both DEVEREUX and LADENDORF actively handled those cases and incurred substantial case expenses along with investing significant resources in the form of attorney time and staff hours in prosecuting these cases.

27.     But for the time and resources DEVEREUX and LADENDORF expended on behalf of the clients on the 21 cases, those cases would have terminated without any successful resolution and no attorney fees would have been earned or generated.

28.     Shortly before the filing of and during the pendency of the federal criminal charges, CONOUR and the CONOUR FIRM filed Notices of Intent to Hold Common Law and Contractual Attorney's Retaining Lien in the subject cases.

29.     During this same time period, CONOUR and the CONOUR FIRM defaulted on the loan agreements with ACF 2006 Corp. (ACF") and ACF elected to pursue its rights as a

5

secured creditor of CONOUR and the CONOUR FIRM.  ACF filed Motions to Intervene in all of the 21 SUBJECT CASES and those Motions to Intervene have all been granted.

30.     ACF filed this declaratory judgment action on or about August 13, 2013 and Count III of ACF's Complaint seeks a declaratory judgment against Defendants Mark C. Ladendorf, Attorney At Law, P.C. (the "Ladendorf Firm"), Timothy F. Devereux ("Mr. Devereux"), Cohen & Malad, LLP (the "Cohen Firm") and Jeffrey A. Hammond ("Mr. Hammond") that the attorneys' fees and expense reimbursements recovered in certain contingency fee cases are subject to ACF's security interest and part of ACF's collateral securing the obligations of Mr. Conour and the Conour Firm. Counts II and IV of ACF's Complaint seek an accounting and turnover of ACF's collateral by all Defendants.

31.     Plaintiffs/Intervenors, DAVID L. BEALS, SR., LORETTA BEALS, AND KRISTEN BEALS by her guardians DAVID L. BEALS, SR. and LORETTA BEALS, SARA J. KELTON (MASTERSON), individually and as Personal Representative of the Estate of MICHAEL CONDON AND ZACKERY CONDON, intervened in this litigation claiming that they possessed a security interest in the attorney fees generated from the SUBJECT CASES and that their security interest has priority over that of ACF.

32.     DEVEREUX was only an Associate Attorney at the CONOUR FIRM and had no ownership interest in that firm.

33.     In addition, DEVEREUX was never a party to any of the agreements under which ACF claims its security interest nor did DEVEREUX have any direct knowledge of or dealings with ACF.

34.     Further, DEVEREUX nor LADENDORF has never been a party to any agreement or contract with ACF whatsoever.

35.     ACF never entered into any contractual relationship with DEVEREUX and LADENDORF regarding the SUBJECT CASES.

6

36.     ACF never entered into any contractual relationship with any of the clients involved in the SUBJECT CASES.

37.     CONOUR's mishandling of the settlements belonging to the Plaintiff/Intervenors occurred many years before the CONOUR FIRM came into existence.

38.     Any interest in a portion of the attorney fees generated from the SUBJECT CASES was originally owned by the CONOUR FIRM, not CONOUR personally.  As such, any such interest was not the personal property of CONOUR.

## II.     CONCLUSIONS OF LAW

1.     Indiana law directs that the division of attorney fees generated from the SUBJECT CASES should be determined utilizing a quantum meruit analyses based upon the respective value of the legal services performed on each case by DEVEREUX, LADENDORF, CONOUR and the CONOUR FIRM.

2.     The Indiana Supreme Court has addressed the proper methodology for determining the division of attorney fees on cases where a client has discharged his prior attorney and then subsequently retained a different attorney to bring a case to conclusion.  In Galanis v. Lyons & Truitt, 715 N.E.2d 858 (Ind. 1999) the Indiana Supreme Court recognized that on cases where an attorney has been discharged from a case involving a contingent fee agreement and the client subsequently retained a second attorney to bring the case to conclusion, the first attorney's right to a portion of the attorney fees should be determined by applying a quantum meruit analysis – even in instances where the discharged attorney's fee agreement specifically addressed the issue of fees in the event of being discharged by the client.

3.     There, the Indiana Supreme Court recognized that a client's right to have counsel of their choosing could not be impaired by the language of a contingent fee agreement that would deter the client from selecting a new attorney to represent them.   The Galanis Court

7

acknowledged that (1) a lawyer retained under a contingent fee contract but discharged prior to the contingency is entitled to recover the value of services rendered if there is a subsequent settlement or award and (2) the fee is to be measured by the proportion of the total fee equal to the contribution of the discharged lawyer's efforts to the ultimate result.

4.      The Indiana Supreme Court in <u>Galanis v. Lyons & Truitt</u>, 715 N.E.2d 858 (Ind. 1999) addressed contractual terms that attempt to defeat a client's right to the counsel of their choice:

> "A corollary of the client's right to discharge a lawyer is that a contract between the client and the lawyer that unduly impairs that right is invalid. 1 Geoffrey C. Hazard, Jr. & W. William Hodes, The Law of Lawyering § 1.16:201-1 (1990 & Supp.1998). Accordingly, even if an agreement calls for a full contingent fee in the event of discharge, it is likely to be unenforceable. If a client is required to pay the discharged lawyer the fee for the completed project, especially if this is a percentage contingent fee, and then pay a second fee for its completion, the client's right to discharge the lawyer may be too costly to assert. Id. at § 1.16:602 n. 2.1 (**a client's right to discharge is not much of a right if it would be too costly to assert**); AFLAC, Inc. v. Williams, 264 Ga. 351, 444 S.E.2d 314, 317 (1994) ("**A client should not be deterred from exercising his or her legal right because of economic coercion.**"). Otherwise stated, holding a client responsible for the entire amount of a contract would chill a client's exercise of the right to discharge a lawyer. Estate of Forrester, 562 N.E.2d at 1317; see also Saucier v. Hayes Dairy Prod., Inc., 373 So.2d 102, 116 (La.1978) (**the client's absolute right to discharge a lawyer is stripped of effect if the exercise of that right is conditioned upon payment of the full amount specified in the contract**). The requirement of Professional Conduct Rule 1.5 that a lawyer's fee be reasonable is also relevant.

<u>Galanis v. Lyons & Truitt</u>, 715 N.E.2d 858, 861 (Ind. 1999). [Emphasis added.]

5.      When specifically addressing the method of calculating the division of the attorney fees, the <u>Galanis</u> Court observed:

> In the context of valuing a terminated predecessor's services, as is generally true, "[i]n determining the reasonable value of the legal services rendered, the time expended by the attorney alone is not a controlling factor. Among other things, consideration may be given to the general quality of the effort expended by the attorney." <u>Kizer v. Davis</u>, 174 Ind.App. 559, 369 N.E.2d 439, 446 n. 9 (1977) (citation omitted). In this

context, because both lawyers in this scenario accepted the risk of failure, in addition to the quality of work, each is entitled to consideration of that risk in determining the fair value of his services. Prof. Cond. R. 1.5(a)(8). And, because the underlying theory of payment is quantum meruit, **if there is no fault to be attributed to either the client or the lawyer**, as seems to be the case here, the measure of the benefit conferred is what is received by the client, not what is expended by the lawyer. Cf. RESTATEMENT OF RESTITUTION § 155 (1937). That amount is the portion of contingent fee equal to the total effort expended to achieve the contingency that is attributable to the predecessor's work.

Galanis v. Lyons & Truitt, 715 N.E.2d 858, 862 (Ind. 1999). [Emphasis added.]  As noted by the Galanis Court in the quote above, one of the factors to be considered in making a quantum meruit determination is the fault to be attributed to the discharged attorney.

6.     Here, CONOUR's fault in connection with the clients' decision to terminate their attorney/client relationship and the negative effects that the conduct of CONOUR had on the value of each individual case needs be included in any quantum meruit analyses.

7.     The Indiana Supreme Court in Galanis went on to discuss the doctrine of quantum meruit in the attorney/client arena as follows:

Quantum meruit is an equitable doctrine that prevents unjust enrichment by permitting one to recover the "value of work performed or material furnished if used" by another and if valuable. 17A C.J.S. *Contracts* § 440 at 553 (1963). Where there is a successor lawyer, the benefit the client received from the predecessor's work is either retained by the client in the form of obtaining a more favorable fee agreement, or it is transferred to the successor in the form of relieving the successor of the need to expend the same effort. As applied to this case, if Lyons is not compensated for the useful work it performed on Brown's case, either Brown or Galanis is unjustly enriched. The dollar value to offset the unjust enrichment is based on the value conferred on the client, not the effort expended by the lawyer, although the two may be the same in many instances.

Arriving at the proper number to place on the predecessor's services is ultimately a factual determination for the trial court. The trial court in this case held that the "reasonable value" of Lyons's work should be determined "commensurate with the hourly rate of a community attorney charging for similar services." Judge Staton, dissenting in the Court of Appeals in this case, read this as requiring a fee "equal [to] 'the hourly rate of a community attorney....'" *Galanis v. Lyons & Truitt,* 698 N.E.2d 368, 374 (Ind.Ct.App.1998) (Staton, J., dissenting). The parties apparently

make the same assumption. Lyons challenges this method of calculating the reasonable value of the firm's work. If a fee agreement provides for an hourly rate in the event of a pre-contingency termination, it is presumptively enforceable, **subject to the ordinary requirement of reasonableness**. *See* Indiana Professional Conduct Rule 1.5.  We agree with Lyons that, in the absence of such an agreement, the value of a discharged lawyer's work on a case is not always equal to a standard rate multiplied by the number of hours of work on the case. Where the lawyers have agreed to work on contingent fees and there is no contractual provision governing payment in the event of discharge, compensating the predecessor lawyer on a standard hourly fee could produce either too little or too much, depending on how the total hourly efforts of all lawyers compare to the contingent fee.

Galanis v. Lyons & Truitt, 715 N.E.2d 858, 861-862 (Ind. 1999).  See also Fitzpatrick v. Kenneth J. Allen and Assoc., Inc., 913 N.E.2d 255, 266 (Ind.Ct.App.2009)(*Quantum meruit* is an equitable doctrine that prevents unjust enrichment by permitting one to recover the value of the work performed or material furnished if used by another and if valuable).  In the case of attorney and client, the value is that of "the benefit the client received" from the attorney's work. See *Major v. OEC Diasonics, Inc.,* 743 N.E.2d 276, 282 (Ind.Ct.App.2001); Daniel G. Suber & Associates v. Smith, 985 N.E.2d 373 (Ind. Ct. App. 2013).

8.     The Indiana Supreme Court has recently confirmed this principle specifically limiting a discharged attorney's right to claim only "a reasonable fee."  In In re Truman, 7 N.E.3d 260 (Ind. 2014), the Indiana Supreme Court disciplined an attorney who attempted to enforce contractual provisions within an associate attorney's employment agreement under which Truman sought to restrict the associate attorney's rights to represent former clients after the associate attorney terminated his employment with Truman.  In reaching its decision, the Truman Court cited to an Ohio Supreme Court case as follows:

The Ohio Supreme Court recently addressed a similar situation. In that case, an attorney's employment agreement with his associates restrained them from taking clients with them when the associates left the attorney's firm by requiring a departing associate to remit to the attorney 95% of the fees generated in a case involving a former firm client, regardless of the proportion of the work that the attorney and the

associate performed on the client's case. The Ohio Supreme Court found that the attorney violated Ohio's Professional Conduct Rules 5.6 and 1.5 (prohibiting excess fees) and approved an agreed public reprimand. See Cincinnati Bar Assn. v. Hackett, 129 Ohio St.3d 186, 950 N.E.2d 969 (2011). A client's "absolute right to discharge an attorney or law firm at any time, with or without cause, subject to the obligation to compensate the attorney or firm for services rendered prior to the discharge[,] ... would be hollow if the discharged attorney could prevent other attorneys from assuming the client's representation." Id. at 970 (internal quotation and citation omitted).

In re Truman,  7 N.E.3d 260, 261 (Ind. 2014).

9.      Here, the case law and authorities set forth above demonstrate that, in Indiana, the proper method for determining the division of attorney fees generated in the SUBJECT CASES between DEVEREUX, LADENDORF and ACF is the application of the equitable doctrine of quantum meruit.

10.     Although ACF, as the secured creditor of CONOUR and the CONOUR FIRM (or some other creditor), may possess some right to a portion of the attorney fees generated from the SUBJECT CASES, ACF's interest is no greater than CONOUR's nor does ACF's interest entitle it to seek an unreasonable portion of the attorney fees at issue.  See, e.g.,  Fifth Third Bank v. Peoples Nat. Bank, 929 N.E.2d 210, 214-15 (Ind. Ct. App. 2010) citing McFarland v. Brier, 850 A.2d 965, 979 (R.I.2004).

11.     Under the loan agreements and guarantees executed by CONOUR, the CONOUR FIRM and ACF, CONOUR assigned any rights to the future revenue generated from the SUBJECT CASES to ACF in the event of a default of the terms of those loan agreements and guarantees.

12.     It is well recognized that an assignee (ACF) takes no greater rights than those possessed by the assignor (CONOUR). University Casework Systems, Inc. v. Bahre (1977), 172 Ind. App. 624, 636, 362 N.E.2d 155, 163.  See also, Brown v. Indiana Nat. Bank, 476 N.E.2d 888, 894 (Ind. Ct. App. 1985)

13.     As noted by the Indiana Court of Appeals in <u>Indianapolis-Marion Cnty. Pub.</u>

<u>Library v. Charlier Clark & Linard, PC</u>, 929 N.E.2d 838, 848 (Ind. Ct. App. 2010):

> As a general rule, a valid and unqualified assignment operates to transfer to the assignee all the right, title, or interest of the assignor in or to the property or property rights that are comprehended within the terms of the assignment. Such transfer confers a complete and present right in the subject matter to the assignee....
>
> .... An assignment vests in the assignee all rights, remedies, and contingent benefits which are incidental to the thing assigned, except those which are personal to the assignor and for his benefit only.
>
> *Rasp v. Hidden Valley Lake, Inc.,* 519 N.E.2d 153, 158 (Ind.Ct.App.1988) (citation omitted). **"[A] valid assignment gives the assignee neither greater nor lesser rights than those held by the assignor. Unless a contrary intent is shown, the assignee stands in the shoes of the assignor.**" *Pettit v. Pettit,* 626 N.E.2d 444, 447 (Ind.1993) (citation omitted).  [Emphasis added.]

14.     ACF's right to a portion of the attorney fees is also subject to any defenses that could be asserted to reduce or completely bar CONOUR from claiming any portion of the attorney fees generated from the SUBJECT CASES.

15.     ACF stands in the shoes of CONOUR and the CONOUR FIRM as it relates to claiming any portion of the attorney fees generated from the SUBJECT CASES.  Similarly, ACF's interest is also subject to any defenses that could be asserted against CONOUR and/or the CONOUR FIRM that would reduce or bar those claims to any portion of all of the attorney fees in question.

16.     This issue is of particular relevance to this declaratory judgment action because the conduct of CONOUR has directly and severely adversely affected the value of the personal injury claims in the SUBJECT CASES.  For example, CONOUR, the CONOUR FIRM and, in turn, ACF, are asserting a right to a portion of the attorney fees in the case of <u>Deborah Marlow,</u>

<u>individually and as the parent of Gracelyn Danforth-Harrison v. Alco, Ltd., Alco Inc., Venturer</u>

and Kelly Jones pending in the Bartholomew Superior Court No. 2 under Cause NO. 03D02-1002-CT-101 despite the fact that CONOUR stole over $62,000.00 of the settlement proceeds in that case.

17.     By way of background, a lawsuit was filed by Deborah Marlow on behalf of herself and her minor daughter Gracelyn Danforth-Harrison ("GRACELYN') against Alco, Ltd., Alco Inc., and Venturer and Kelly Jones for the injuries sustained by GRACELYN in the Bartholomew Superior Court No. 2 under Cause NO. 03D02-1002-CT-101.  Deborah Marlow and GRACELYN were originally represented by the CONOUR LAW FIRM and Deborah Marlow settled GRACELYN's claims against Kelly Jones, the driver of the vehicle in which GRACELYN was a passenger for the sum of $100,000.00.  The Probate Court for Decatur County, Indiana approved the settlement of the claims against Kelly Jones on December 13, 2011.

18.     As a result of that settlement, CONOUR and the CONOUR FIRM were ordered to place and maintain the $62,593.75 of net settlement proceeds belonging to GRACELYN in the CONOUR LAW FIRM's trust account on behalf of GRACELYN.  Following that Court's Order of December 13, 2011, it was discovered that CONOUR and the CONOUR FIRM failed to keep those funds in the appropriate trust account and that CONOUR had, instead, misappropriated those settlement proceeds.

19.     On July 23, 2012, the Probate Court for Decatur County, Indiana held CONOUR in contempt for his refusal to identify the location of those funds and for his refusal to turn those funds over to Deborah Marlow or the Probate Court for Decatur County, Indiana.

20.     Deborah Marlow and GRACELYN were subsequently represented by DEVEREUX and LADENDORF in connection with their product liability claims against Alco, Ltd., Alco Inc., and Venturer, the manufacturer and distributors of the DVD Player in question.

DEVEREUX and LADENDORF engaged in discovery and otherwise investigated, litigated and pursued damages for GRACELYN and Deborah Marlow.

21.     On or about May 12, 2014, DEVEREUX and LADENDORF reached a settlement of the product liability claims described above and requested that ACF waive any claim it may have asserted for a portion of the attorney fees arising out of the product liability settlement based upon CONOUR's theft of the settlement proceeds from the prior settlement of GRACELYN's claims against Kelly Jones.

22.     Although ACF has withdrawn its claim for attorney fees arising out of this settlement, Plaintiff/Intervenors have refused to withdraw its claims to those funds even in light of the fact the that Probate Court for Decatur County, Indiana specifically entered an Order finding that neither Conour nor any of his creditors have any claim to any portion of the attorney fees from GRACELYNN's settlement.

23.     Similar issues involving CONOUR's mishandling and theft of settlement proceeds as well as the withholding of case expenses and amounts for subrogated workers compensation liens that were never actually paid by CONOUR from settlement proceeds on the SUBJECT CASES exist and will need to be addressed in order to reach a resolution of the claims made by ACF in Counts II, III and IV of ACF's Complaint against LANDENDORF and DEVEREUX.

24.     This Court finds, as a matter of law, that neither ACF nor Intervenors possess no greater rights to any portion of the attorney fees generated in the SUBJECT CASES than did CONOUR and the CONOUR FIRM and that ACF's security interests are subject to any defenses that could be asserted to reduce or completely bar CONOUR from claiming any portion of the attorney fees.

25.     DEVEREUX was only an Associate Attorney at the CONOUR FIRM and had no ownership interest in that firm.

26.     DEVEREUX was never a party to any of the agreements under which ACF claims its security interest nor did DEVEREUX have any direct knowledge of or dealings with ACF.

27.     DEVEREUX has never been a party to any agreement or contract with ACF whatsoever.

28.     No written or verbal agreement was ever entered into between CONOUR and DEVEREUX/LADENDORF regarding the transfer of the SUBJECT CASES.

29.     The clients in each of the SUBJECT CASES terminated their attorney-client relationship with CONOUR voluntarily after being advised of their absolute right to have counsel of their choosing.

30.     DEVEREUX's departure from the CONOUR FIRM was not amicable nor was it done through any agreement between DEVEREUX and CONOUR.

31.     There was no agreement whatsoever between DEVEREUX and ACF in any form at any time and there was no agreement between DEVEREUX and CONOUR which sought to circumvent ACF's security interest.  Contrary to ACF's assertion, this is not a situation where the partners of a firm colluded together to dissolve a firm in an attempt to destroy a secured creditor's interests.

32.     The sums in question are first and foremost attorney fees governed by Indiana law.

33.     Nothing about ACF's security interest converts these sums into anything other than attorney fees which are subject to the limitations and restrictions contained in Indiana law.

34.     As these amounts are attorney fees, Indiana law limits any attorney to claiming only a "reasonable fee."

35.     The Indiana Supreme Court has specifically held that in situations such as this, the attorney fees are to be divided based upon a quantum meruit calculation of the value of the legal services performed be each respective attorney.

36.     ACF does not and cannot have a security interest in attorney fees earned solely by and exclusively owed to DEVEREUX and LADENDORF.

37.     ACF's contractual rights are limited solely to the property interests owned by the CONOUR LAW FIRM (which, as discussed above, is limited to a quantum meruit portion of the attorney fees from only the SUBJECT CASES that were successfully resolved).

38.     Neither the clients in the SUBJECT CASES, DEVEREUX nor LADENDORF ever granted ACF any security interest in the proceeds of the SUBJECT CASES and they have no contractual obligations at all toward ACF.

39.     ACF cannot enforce a security interest over property that the CONOUR LAW FIRM never owned or had the right to make a claim against.  In fact, ACF's security interest could not have attached until such time as each of the SUBJECT CASES was successfully resolved.  Further, each of the SUBJECT CASES were contingent fee personal injury matters and the CONOUR LAW FIRM would have no claim whatsoever in the event the cases were unsuccessful.

40.     Under Indiana Code Section 9-204(1) the security interest assigned by the CONOUR LAW FIRM to Advocate Capital does not attach until the CONOUR LAW FIRM acquired the rights to the COLLATERAL.

41.    Here, the CONOUR LAW FIRM had no enforceable rights to a portion of the attorney fees in any of the SUBJECT CASES until such time as each of the SUBJECT CASES was successfully resolved and attorney fees were generated.

42.    But for the efforts of DEVEREUX and LADENDORF in pursuing the SUBJECT CASES to successful conclusions, there would be no attorney fees at all for ACF to seek recovery from.

43.    It is both illogical and contrary to well settled Indiana law to find that ACF, as the creditor of the CONOUR LAW FIRM, it is entitled to be fully reimbursed before the attorneys whose efforts actually generated the fees can get paid.

44.    If this were truly the case, then no client of any attorney who had entered into a loan agreement with ACF would ever be able to discharge that attorney and seek new counsel. Such a result clearly runs afoul of Indiana's well recognized law that a client has an absolute right to discharge an attorney or law firm at any time, with or without cause, subject to the obligation to compensate the attorney or firm for services rendered prior to the discharge . . .." In re Truman, 7 N.E.3d 260, 261 (Ind. 2014).

45.    ACF cannot alter the public policy of the state of Indiana by entering into loan agreements with attorneys that ACF claims gives it an absolute right to collect an attorney fee that would be unreasonable and unenforceable if the attorney in question themselves sought to collect those fees.  See In re Truman, 7 N.E.3d 260 (Ind. 2014).

46.    The quantum meruit methodology for determining the division of attorney fees in the SUBJECT CASES does not change based upon the identity of the creditor claiming that interest.

47.    What portion of the attorney fees that is attributable to legal work performed while the SUBJECT CASES were handled by the CONOUR LAW FIRM is a factual

17

determination to be made based upon a comparison of the legal services performed by the respective firms that worked on the SUBJECT CASES.

48.     This factual determination is wholly independent of the identity of the party claiming to be entitled to collect the CONOUR LAW FIRM's interest.

49.     Contrary to the position taken by Plaintiff/Intervenors, there is not a separate standard to be applied to this analysis if they are found to have priority over ACF.  As discussed above, a review of the holding in Galanis v. Lyons & Truitt, 715 N.E.2d 858, 861 (Ind. 1999) establishes to appropriate criteria to be applied in this analysis.

50.     Plaintiffs/Intervenors, David L. Beals, Sr., Loretta Beals, and Kristen Beals by her guardians David L. Beals, Sr. and Loretta Beals, (hereinafter collectively referred to as "BEALS") Sara J. Skelton (Masterson), individually and as Personal Representative of the Estate of Michael Condon and Zackery Condon (hereinafter collectively referred to as "CONDON") filed their Motion to Intervene in this litigation asserting that they had an interest in the attorney fees generated in the SUBJECT cases.

51.     The BEALS allege that they have a judgment against CONOUR for settlement funds he stole from them.

52.     CONDON, in turn, asserted that they had initiated litigation against CONOUR and were anticipating receiving a judgment against CONOUR in their litigation.

53.     BEALS and CONDON have further asserted that their interests take priority over the security interest of ACF.

54.     BEALS and CONDON are among the victims listed in the Restitution Order entered as part of the CONOUR criminal conviction and that they have received a small portion of their claimed damages through that Restitution Order.

55.     In the event that this Court determines BEALS and CONDON's interests take

18

priority over the secured interests of ACF, BEALS and CONDON interests do not take priority over the other victims listed in the Restitution Order and that they should be treated exactly the same as every other victim identified in the Restitution Order.

56.   As admitted by BEALS and CONDON in Paragraph 10 of their Intervenors' Complaint:

> 10.  The attorney fees held by Defendants in this matter are subject to the liens in favor of Intervenors **established by the criminal Restitution Order.** (See Intervenors' Complaint, paragraph 10; Document 49-1 in the electronic Case Docket.) [Emphasis added.]

57.   Only the United States is authorized to enforce restitution awards using the procedures available for the collection of criminal fines outlined in 18 U.S.C. § 3613(a). See 18 U.S.C. § 3613(f)("all provisions of this section are available to the United States for the enforcement of an order of restitution"). No party other than the United States is authorized or has standing to enforce restitution awards. *Id*.

58.   BEALS and CONDON, as individual Plaintiffs/Intervenors, do not have standing to enforce the Restitution Order. The United States is authorized to collect the Restitution Award "in accordance with the practices and procedures for the enforcement of a civil judgment under Federal law or State law." 18 U.S.C. § 3613(a).  Moreover, the United States is authorized to record a lien in all of the defendant's property and rights to property as if the liability were a liability for a tax assessed under the Internal Revenue Code of 1986. 18 U.S.C. § 3613(c). No party other than the United States is authorized to record or enforce such lien. 18 U.S.C. § 3613(c).

59.   CONOUR was holding *all* of the victims' settlement proceeds in trust and there is nothing unique about the BEALS and CONDON interests that justify them being given priority over the other 28 victims identified in the Restitution Order.

60.   BEALS and CONDON should are estopped from pursuing their individual claims

against the attorney fees at issue in this litigation because they have elected to participate in the Restitution Order and they have already received funds pursuant to that Restitution Order.

61.     It is inequitable and improper for BEALS and CONDON to reap the benefits of the Restitution Order and, at the same time, seek to place their individual claims ahead of all of the other CONOUR victims identified in the Restitution Order.

62.     BEALS and CONDON have failed to provide any legal or factual basis to justify placing their claims before all of the other CONOUR victims.

63.     Should this Court determine that ACF's security interest is not entitled to the first priority, then the Victims Restitution Fund should come first pursuant to 18 U.S.C. § 3613 rather than the interests of BEALS and CONDON.

64.     The Court shall conduct an evidentiary hearing to determine the quantum meruit value of the portion of attorney fees attributable to the legal services performed on the SUBJECT CASES while they were represented by the CONOUR FIRM and during the time they were represented by DEVEREUX and LADENDORF.

Respectfully submitted,

/s/ Timothy F. Devereux, Esq. #25250-49
Timothy F. Devereux, No. 25250-49
**LADENDORF & LADENDORF**
7310 N. Shadeland Avenue
Indianapolis, IN  46250
Phone:  (317) 842-5800
Fax:  (317) 842-5858
Email:  Tim@ladendorf.com
*Counsel for Defendants, Mark C. Ladendorf &*
*Timothy F. Devereux*

<u>**CERTIFICATE OF SERVICE**</u>

This is to certify that on this 29th day of January, 2015 this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

Christopher C. Hagenow, Esq.
**BLACKWELL, BURKE & RAMSEY, P.C.**
111 Monument Circle, Ste. 452
Indianapolis, IN  46204
Chagenow@hopperblackwell.com

Jeffrey A. Hammond, Esq.
**COHEN & MALAD, LLP**
One Indiana Sq., Ste. 1400
Indianapolis, IN  46204
jhammond@cohenandmalad.com

Roger Jones, Esq.
**BRADLEY ARANT BOULT CUMMINGS, LLP**
1600 Division St., Ste. 700
Nashville, TN  37203
RJones@BABC.com

James R. Fisher
**MILLER & FISHER, LLP**
Fisher@millerfisher.com

I also certify that a copy of the foregoing was served on this 29th day of January, 2015 by placing a copy of the same in the U.S. first class mail, addressed to:

William F. Conour
Register Number: 10620-028
Morgantown Federal Corrections Institution
446 Greenbag Road, Route 857
Morgantown, WV  26501

/s/ Timothy F. Devereux, Esq. #25250-49
Timothy F. Devereux, No. 25250-49
**LADENDORF & LADENDORF**
7310 N. Shadeland Avenue
Indianapolis, IN  46250
Phone:  (317) 842-5800
Fax:  (317) 842-5858
Email:  Tim@ladendorf.com
*Counsel for Defendants, Mark C. Ladendorf &
Timothy F. Devereux*

21