UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| ACF 2006 CORP, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 1:13-cv-01286-TWP-DML |
| | ) |
| WILLIAM F. CONOUR Clerk's Entry of Default Entered 11/18/2013, | ) |
| CONOUR LAW FIRM, LLC Clerk's Entry of Default Entered 11/18/2013, | ) |
| MARK C. LADENDORF ATTORNEY AT LAW, P.C., TIMOTHY F. DEVEREUX, | ) |
| COHEN & MALAD, LLP, and | ) |
| JEFFREY A. HAMMOND, | ) |
| | ) |
| Defendants. | ) |
| | ) |
| DAVID L. BEALS, SR., LORETTA BEALS, KRISTEN BEALS by her guardians David L. Beals, Sr. and Loretta Beals, SARA J. SKELTON (Masterson) individually and as Personal Representative of the Estate of Michael Condon, and ZACKERY CONDON, | ) |
| | ) |
| Intervenors. | ) |

## ENTRY ON CROSS-MOTIONS FOR SUMMARY JUDGMENT

This matter is before the Court on the parties' various Motions for Summary Judgment. The claims in this case arise following the conviction for fraudulent misappropriation of client funds by Defendant William F. Conour ("Mr. Conour"), a once-prominent personal injury/wrongful death attorney in the Indiana legal community. The parties involved in this case are Plaintiff ACF 2006 Corp. ("ACF"), a secured creditor of Mr. Conour and his law firm; Defendants Timothy F. Devereux ("Mr. Devereux") and Mark C. Ladendorf, Attorney at Law,

P.C. (the "Ladendorf Firm"), attorneys who took over some of Mr. Conour's cases; and Intervenors David L. Beals, Loretta Beals, Kristen Beals ("the Beals"), Sara J. Skelton (Masterson) individually and as Personal Representative of the Estate of Michael Condon, and Zackery Condon ("the Condons"), victims whose settlement money was stolen by Mr. Conour.

AFC filed a Motion for Summary Judgment ([Filing No. 59](#)) on its claims for breach of contract and declaratory judgment. Thereafter, Mr. Devereux and Mark Ladendorf ("Mr. Ladendorf"), filed their Motion for Summary Judgment ([Filing No. 63](#)). A Cross-Motion for Partial Summary Judgment was filed by the Intervenors ([Filing No. 70](#)).

ACF's Complaint seeks a money judgment against Mr. Conour and Conour Law Firm, LLC ("the Conour Firm") for breach of their obligations under certain loan agreements and guaranties. ACF also seeks a declaratory judgment against the Ladendorf Firm, Mr. Devereux, Cohen & Malad, LLP ("Cohen & Malad") and Jeffrey A Hammond ("Mr. Hammond") that the attorneys' fees and expense reimbursements recovered in certain contingency fee cases are subject to ACF's security interest and are part of ACF's collateral securing the obligations of Mr. Conour and the Conour Firm. ACF also seeks an accounting and turnover of the disputed collateral by all Defendants. Intervenors seek a determination of the amount of attorneys' fees held by the Defendants that is available for the satisfaction of the Intervenors' claims; a determination of the validity of the security interest claimed by ACF; a determination of the priority of the claims between the Intervenors and ACF; and collection and distribution of funds according to the Court's determination of priorities. For the reasons set forth below, ACF's Motion is **GRANTED in part** and **DENIED in part**, the Intervenors' Motion is **DENIED**, and Defendants' Motion is **GRANTED**.

## I. BACKGROUND

The material facts in this case are not in dispute. Plaintiff ACF is a Tennessee corporation and a successor in interest to Advocate Capitol, Inc. ("Advocate"). Advocate is registered as an industrial loan and thrift company under Tennessee law. On or about January 18, 2008, Mr. Conour and the Conour Firm executed a Master Loan and Security Agreement in favor of Advocate. Thereafter, on or about January 18, 2009, Mr. Conour and the Conour Firm executed an Amended and Restated Master Loan and Security Agreement in favor of Advocate. On or about January 18, 2010, Mr. Conour and the Conour Firm executed an Amended Loan and Restated Master Loan and Security Agreement in favor of Advocate, which amended and restated the prior loan agreements (collectively, the "Loan Agreements"). The Loan Agreements were amended again by a letter dated January 13, 2011. Mr. Conour also executed Guaranties in favor of Advocate on or about January 18, 2008 and January 18, 2009. The Loan Agreements and the Guaranties are governed by Tennessee law. The purpose of the Loan Agreements was to finance the advanced expenses associated with representation of legal clients in personal injury, medical malpractice, and other tort actions. The Conour Firm typically entered into contingent fee agreements with clients and the advanced expenses were to be repaid from any recoveries.

Under the Loan Agreements, Mr. Conour and the Conour Firm granted Advocate a continuing security interest in various collateral including, but not limited to, the following:

> All accounts, instruments, chattel paper, general intangibles, payment intangibles (all as defined in Article 9 of the Code), and all similar rights that Borrower may have of every nature and kind, including specifically and without limitation, all of Borrower's rights to receive payment or otherwise, for legal and other services rendered and to be rendered, and for costs and expenses advanced and to be advanced, and all other rights and interest that Borrower may have in and with respect to each and every Client Matter.

(the "Collateral"). Advocate perfected its security interest in the Collateral by filing Uniform Commercial Code ("UCC") financing statements with the Indiana Secretary of State's office. In 2013 Advocate assigned its interest under, in and to the Loans, the Loan Agreements and the Guaranties to ACF, and an amended filing statement was filed with the Indiana Secretary of State on August 9, 2013.

Pursuant to the Loan Agreements, Advocate made various loans (the "Loans") to Mr. Conour and the Conour Firm, which matured and became due and payable in full on January 18, 2012. Despite the Loans having matured, Mr. Conour and the Conour Firm failed or refused to pay the unpaid principal, interest, administrative fees, legal fees, and expenses owed under the Loan Agreements and the Guaranties. ACF demanded payment of the Loans and that Mr. Conour and the Conour Firm hold all of ACF's Collateral in trust for the benefit of ACF. As of May 31, 2014, the total amount of principal, interest, fees and expenses owed to ACF pursuant to the Loan Agreements was $681,133.24, which included a principal in the amount of $400,050.81, accrued but unpaid interest in the amount of $190,030.15, and fees and expenses in the amount of $91,052.28.

Beginning in February 2008, Mr. Devereux was employed as an associate attorney at the Conour Firm. Before Mr. Devereux left that employment, the Conour Firm had entered into contingency fee agreements and performed services for clients in connection with numerous cases. Due to the Conour Firm's refusal to remain current on its financial obligations, which failure significantly impaired Mr. Devereux's ability to prosecute the personal injury cases in question, Mr. Devereux resigned his employment from the Conour Firm on December 22, 2011. Upon his resignation, Mr. Devereux joined the Ladendorf Firm as an associate attorney. Following Mr. Devereux's resignation from the Conour Firm, numerous clients of the Conour Firm expressed

their interest to have Mr. Devereux continue to represent them on their pending personal injury cases through his new employer, the Ladendorf Firm. Mr. Conour and the Conour Firm were advised in writing as to each client who chose to terminate their representation by the Conour Firm and be represented by Mr. Devereux and the Ladendorf Firm. Mr. Devereux and the Ladendorf Firm took possession of twenty-one personal injury case files, which were all being handled on a contingent fee basis (the "Subject Cases").

Mr. Hammond was also employed as an associate attorney at the Conour Firm. Before Mr. Hammond left that employment, the Conour Firm entered into a contingency fee agreement and performed service for clients in connection with *Marks v. Headwaters Resources, Inc., et al.*, filed in the Lake County Superior Court (the "Marks Case"). Mr. Hammond became employed by Cohen & Malad after leaving the Conour Firm, and continued to represent the clients in the Marks Case. However, prior to accepting that case, ACF, Mr. Hammond, and Cohen & Malad reached an agreement regarding the division of any attorneys' fees recovered in that case. Mr. Hammond and Cohen & Malad agreed to pay ACF, and ACF has agreed to accept, $21,440.00 in settlement of any amount owed to Mr. Conour and/or the Conour Firm in connection with the Marks Case.

Mr. Devereux was later contacted by the Federal Bureau of Investigation regarding an investigation into Mr. Conour and the Conour Firm for mishandling client settlement funds that were to have been placed in annuities for the benefit of injured clients. A federal criminal complaint was filed on April 27, 2012 against Mr. Conour in the U.S. District Court for the Southern District of Indiana. Mr. Conour was charged with violating 18 U.S.C. § 1343 for defrauding clients of his legal practice. He pled guilty and admitted that the claims set forth in the federal criminal complaint were true. Shortly after being criminally charged, disciplinary charges were filed against Mr. Conour by the Indiana Supreme Court Disciplinary Commission. In

response to those disciplinary charges, Mr. Conour resigned from the practice of law in Indiana by tendering his Affidavit of Resignation, which also stated that the material facts alleged in the criminal complaint were true. Mr. Conour admitted to misappropriating and unlawfully converting more than $4,500,000.00 belonging to more than twenty-five clients. He was sentenced to ten years in federal prison. In addition, an Order of Restitution was entered in the criminal judgment against Mr. Conour, ordering him to make restitution to Intervenors David and Laurie Beals in the amount of $135,928.00, Intervenor Kristin Beals in the amount of $316,953.00, and Intervenor Zach Condon in the amount of $240,000.00, as well as approximately twenty-five other victims. (the "Restitution Order"). The United States recorded its Notice of Lien for Fine and/or Restitution (the "Restitution Lien") in the Recorder's Office, Marion County, Indiana on April 15, 2014.

The Beals and the Condons are former clients of Mr. Conour. The Beals obtained a negotiated settlement in Morgan County, Indiana on July 26, 1996. Under the terms of the settlement agreement, a portion of the settlement proceeds was to be placed into a structured settlement annuity, with payouts over multiple years. Instead of purchasing the annuity, Mr. Conour and the Conour Firm kept the settlement money. The Beals did not learn of the embezzlement of their funds until after the commencement of the criminal action against Mr. Conour, and they filed a lawsuit against Mr. Conour and the Conour Firm on July 12, 2013. The Beals obtained a default judgment on liability on February 26, 2014, and a final damages judgment was entered on April 21, 2014.

The Condons obtained a settlement in their personal injury action in St. Joseph County, Indiana on January 20, 1999. The settlement approved by the court established a trust account to be administered and invested by a trustee. The trust's principle and accumulated earnings were to be delivered to the beneficiary, Zackery Condon, at intervals appropriate to his age. Mr. Conour

did not disclose to the Condons or to the court that the trustee identified in the approved trust documents was actually a subsidiary of Mr. Conour and/or his firm, and Mr. Conour instead misappropriated the funds. The Condons filed suit against Mr. Conour and the Conour Firm on November 18, 2013, and default judgment was entered on June 30, 2014, subsequent to the filing of the Intervenors' Complaint in this action. A final damages judgment was entered in favor of the Condons on July 24, 2014.

ACF now seeks a declaration that the attorneys' fees and expense reimbursements recovered in the Subject Cases are subject to ACF's security interest and are part of ACF's collateral securing the obligations of Mr. Conour and the Conour Firm, as well as an accounting and turnover of ACF's collateral by all Defendants. Since Mr. Devereux left the employment of the Conour Firm, gross attorneys' fees of at least $1,972,325.48 have been recovered in the Subject Cases. Reimbursements for expenses incurred by the Conour Firm in the amount of at least $6,370.03 have also been recovered by the Ladendorf Firm in the Subject Cases. Mr. Devereux and the Ladendorf Firm seek a declaration that ACF is only entitled to a security interest on the *quantum meruit* portion of the fees that would have otherwise been payable to Mr. Conour and the Conour Firm. The Intervenors seek a declaration that ACF does not hold a valid security interest in any of the contingency fees, and that their claims have priority over ACF's claims. Additional fact will be addressed below as necessary.

## II. LEGAL STANDARD

Summary judgment is only appropriate by the terms of Rule 56 where there exists "no genuine issue as to any material facts and . . . the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. This notion applies equally where, as here, opposing parties each move for summary judgment in their favor pursuant to Rule 56. *I.A.E., Inc. v. Shaver*, 74 F.3d

768, 774 (7th Cir. 1996). Indeed, the existence of cross-motions for summary judgment does not necessarily mean that there are no genuine issues of material fact. *R.J. Corman Derailment Serv., Inc. v. Int'l Union of Operating Eng'rs.*, 335 F.3d 643, 647 (7th Cir. 2003). Rather, the process of taking the facts in the light most favorable to the non-movant, first for one side and then for the other, may reveal that neither side has enough to prevail without a trial. *Id.* at 648. "With cross-motions, [the Court's] review of the record requires that [the Court] construe all inferences in favor of the party against whom the motion under consideration is made." *O'Regan v. Arbitration Forums, Ins.*, 246 F.3d 975, 983 (7th Cir. 2001) (quoting *Hendricks–Robinson v. Excel Corp.*, 154 F.3d 685, 692 (7th Cir. 1998)).

### III. DISCUSSION

As an initial matter, the Court will address the Intervenors' Motion for Leave to File Amended Complaint which was filed on October 2, 2014 ([Filing No. 88](#)). This motion to amend was filed over three months after ACF filed its motion for summary judgment, two months after the Intervenors filed their cross-motion for partial summary judgment, and well after briefing on all of the summary judgment motions had concluded. The proposed amended complaint appears to address the deficiencies raised by Plaintiff and Defendants in their summary judgment briefs, and the Court will not permit such an amendment at this late stage of the litigation. "The judicial system, as well as parties moving for summary judgment, would be burdened and prejudiced by litigants . . . who file an amended complaint solely in an effort to stall the entry of summary judgment." *Gray v. Schaub*, 182 F.3d 921 (7th Cir. 1999). The motion to amend ([Filing No. 88](#)) is **DENIED**, and the Court will not consider the Intervenors' proposed amended complaint.

ACF's Motion for Summary Judgment and Mr. Devereux and the Ladendorf Firm's Motion for Summary Judgment ([Filing No. 63](#)) address the same issue, namely whether and to

what extent the contingency fees recovered by the Ladendorf Firm in the Subject Cases are subject to ACF's security interest. ACF argues that Article 9 of the UCC is applicable in this case and provides ACF with a continuing security interest in the entire amounts recovered by Mr. Devereux and the Ladendorf Firm in the Subject Cases. Mr. Devereux and the Ladendorf Firm do not dispute that ACF holds a valid security interest, but argues that this interest only applies to the *quantum meruit* portion of the fees to which Mr. Conour and the Conour Firm are entitled to receive under Indiana law. The Court will address each dispute in turn, beginning with the dispute between ACF and Mr. Devereux and the Ladendorf Firm.

A. **AFC's Claims Under UCC Article 9**

Article 9 of the UCC applies to "a transaction, regardless of its form, that creates a security interest in personal property or fixtures by contract." I.C. § 26-1-9.1-109(a)(1); Tenn. Code Ann. § 47-9-109(a)(1).[1] A security interest may attach to "accounts," which the UCC defines as "any right to payment of a monetary obligation, whether or not earned by performance . . . for services rendered or to be rendered . . . ." I.C. § 26-1-9.1-102(a)(2); Tenn. Code. Ann. § 47-9-102(a)(2). Courts have held that contingency fee contracts and fees pending in contingency fee cases are accounts for purposes of Article 9. *See In re Holstein Mack & Klein*, 232 F.3d 611, 612 (7th Cir. 2000) (legal fees to be earned from personal injury and class action suits by law firm considered to be "receivables"); *ACF 2006 Corp v. Merritt*, No. CIV-12-161, 2013 WL 466603, at *3 (W.D. Okla. Feb. 7, 2013) *aff'd,* 557 F. App'x 747 (10th Cir. 2014) ("Courts have uniformly held that contracts for legal fees, including fees in pending contingency fee cases, are accounts for Article

---

[1] The Loan Agreements are governed by Tennessee law, and therefore the issues of attachment, validity, and enforcement of ACF's security interest are governed by Tennessee law. *See* I.C. § 26-1-9.1-301, Official Comment 2; Tenn. Code Ann. § 47-9-301, Official Comment 2. However, while a debtor is located in a jurisdiction, the local law of that jurisdiction governs perfection, the effect of perfection or non-perfection, and the priority of a security interest in collateral. *See* I.C. § 26-1-9.1-301. Because both Tennessee and Indiana law are substantively similar, the outcome would be the same regardless of which law is applied.

9

9 purposes.") (citing cases). The secured party's interest in the collateral, including accounts, continues "notwithstanding sale, lease, license, exchange, or other disposition," unless the secured party authorized the disposition free of the security interest. Ind. Code Ann. § 26-1-9.1-315(a); Tenn. Code. Ann. § 47-9-315(a). Further, "a security interest attaches to any identifiable proceeds of collateral." *Id.*

While the Court, as well as Defendants, agree that ACF held a valid security interest in the contingency fee contracts of clients represented by Mr. Conour and the Conour Firm, the Court also agrees with Defendants that this security interest does not extend to the entire amount of the contingency fees and expenses recovered by Mr. Devereux and the Ladendorf Firm during their representation of clients in the Subject Cases. ACF argues that Mr. Devereux and the Ladendorf Firm took the Subject Cases subject to ACF's security interest, essentially viewing these cases as being transferred or assigned to Mr. Devereux and/or the Ladendorf Firm. However, the undisputed facts show that these clients terminated their attorney-client relationship with the Conour Firm and entered into new contingency agreements with the Ladendorf Firm and Mr. Devereux. Thus, Mr. Conour and the Conour Firm's contracts with these clients ended upon the clients' voluntary choice to terminate the relationship, thus ending ACF's interest in those contracts. The contingency fees had not yet become payable when the clients terminated their contracts, as the matters had not yet been resolved by settlement or judgment in favor of the clients. ACF did not have a contractual agreement with Mr. Devereux or the Ladendorf Firm, and therefore could have no security interest in the contingency fee contracts between the clients in the Subject Cases and their new counsel.

Additional considerations under Indiana law support the conclusion that ACF is entitled only to the amount that Mr. Conour and the Conour firm could recover from the Subject Cases.

Under Indiana law, clients have an absolute right to the counsel of their choice. "A client has a right to discharge a lawyer at any time, with or without cause, subject to liability for payment for the lawyer's services." *Galanis v. Lyons & Truitt*, 715 N.E.2d 858, 861 (Ind. 1999) (quoting Indiana Professional Conduct Rule 1.16 comment). The "liability for payment of the lawyer's services" has been held not to be the entire amount that would have been owed under the original contingency fee agreement, but rather the former attorney's portion of the total recovery based upon the amount of work he performed prior to the client's discharge. The Supreme Court of Indiana has held "[t]he conventional rule is that '[a]n attorney who is employed under a contingent fee contract and discharged prior to the occurrence of the contingency is limited to quantum meruit recovery for the reasonable value of the services rendered to the client, and may not recover the full amount of the agreed contingent fee.'" *Id.* (quoting 7 Am. Jur. 2d *Attorneys at Law* § 181 (1997)).

In *Galanis*, the client, Brown, retained an attorney at Lyons & Truitt to represent her in a personal injury matter. The attorney, Truitt, and an associate prepared for trial over the next two and one-half years. Brown later discharged the firm and retained another attorney, Galanis. Brown signed a written contingent fee agreement providing that Galanis would receive 40% of the gross amount recovered if the case settled or went to trial, plus an additional 10% if the case was appealed. The agreement made no reference to compensating Brown's previous attorney. When Galanis met with Truitt to obtain Brown's file, Truitt explained that his firm had taken the case under a one-third contingent fee arrangement, provided for in a written agreement between Brown and Lyons & Truitt. Brown's case was settled for $200,000.00, and the two attorneys were unable to agree on the fee to be paid to Lyons & Truitt. The court held that the subsequent attorney was responsible for paying the previous attorney the quantum meruit recovery for the reasonable value

11

of services that the previous attorney rendered to the client, not the full amount of the agreed contingent fee. *Id.* at 861-63. The court further stated that a contract between the client and a lawyer that unduly impairs the client's right to the counsel of his choice is invalid. *Id.* at 861. Where the client's right would be "too costly to assert," such as where the previous attorney's agreement called for a full contingent fee in the event of discharge, the client's right to discharge a lawyer would be chilled and the fee agreement would be unenforceable. *Id.* This type of arrangement would also give the previous attorney a windfall, as "[a] full contingency for partial completion overcompensates the discharged lawyer by giving a full contingent fee for less than a full work load." *Id.*; *see also In re Truman*, 7 N.E.3d 260 (Ind. 2014) ("A client's absolute right to discharge an attorney or law firm at any time, with our without cause, subject to the obligation to compensate the attorney or firm for services rendered prior to the discharge[,] . . . would be hollow if the discharged attorney could prevent other attorneys from assuming the client's representation.") (internal quotations omitted).

Applying the principles in *Galanis*, the termination of the attorney-client relationship between clients in the Subject Cases and the Conour Firm terminated Mr. Conour's and the Conour Firm's right to recover the full amount of the contingency fees, thus also terminating ACF's continuing interest in those cases. The security agreement specifically states that ACF has as security, interest in "Borrower's rights to receive payment or otherwise, for legal and other services rendered." Under Indiana law, Mr. Conour and the Conour Firm only have the right to receive a *quantum meruit* recovery from Defendants, thus ACF only has a security interest in these amounts. Permitting a secured party to have a continuing security interest in a client's matter beyond the obligor's relationship with the client would—besides violating basic rules of contract law—impermissibly chill the client's right to select new counsel, as it would be almost impossible to

12

find an attorney to take on a matter knowing that the entirety of the potential fees recovered would go to a third party.

ACF cites to *Cadle Co. v. Schlichtmann*, 267 F.3d 14 (1st Cir. 2001), to argue that its security interest is not limited to the amount Mr. Conour and the Conour Firm would receive on a *quantum meruit* basis, but rather that Defendants took the Subject Cases subject to ACF's security interest on the entire amount recovered from settlement of judgment. In *Cadle*, a creditor had been granted a security interest in a law firm's accounts receivable. Following a bankruptcy and dissolution of the partnership, one of the partners continued work on a client's matter that had previously been handled by the firm. The secured party sought to enforce its security interest against the fee recovery on the client's matter. The First Circuit held that "[*p]artners* cannot eliminate a security interest in the *partnership's* anticipated fees by transferring . . . the client's files, whether by dissolution of the partnership or otherwise." 267 F.3d at 18 (emphasis added). The court found that the firm had transferred both the right to payment and performance to the partner, and the security interest continued on the entire amount of the attorney fees recovered. *Id.*

*Cadle* is readily distinguishable from this case. First, Mr. Devereux was not a partner in the Conour Firm; he was merely an employee. ACF's argument that the First Circuit did not base its decision on the existence of the partnership is unavailing; partners are personally liable for business debts, whereas employees are not. This is a very important distinction that ACF asks the Court to ignore. Mr. Devereux had no contractual relationship with ACF during his employment with the Conour Firm, and thus cannot be held liable for any of the Conour Firm's obligations under the Loan Agreements. Second, the attorney in *Cadle* had an agreement with his former partners to take over the client matter in exchange for one-third of any recovered attorney's fee; thus, the case was assigned to the former partner. In the instant case, the clients voluntarily chose

to terminate their relationship with the Conour Firm and establish a new relationship with the Ladendorf Firm, thus there was no assignment. By ACF's logic, *any* client that terminated her attorney and subsequently hired a different attorney could potentially have her matter encumbered by a security interest, whether the subsequent attorney had any relationship with the prior attorney or not. Again, this outcome would run afoul of Indiana law by preventing a client from selecting new counsel. Therefore, the Court finds that ACF's security interest is limited to the amount Mr. Conour and the Conour Firm are entitled to receive from the Ladendorf Firm on a *quantum meruit* basis for each of the Subject Cases.

The determination of the exact amount Mr. Conour and the Conour Firm is entitled to under a theory of *quantum meruit* is a question of fact that cannot be resolved at summary judgment. "Arriving at the proper number to place on the predecessor's services is ultimately a factual determination for the trial court." *Galanis*, 715 N.E.2d at 862. If an attorney fee agreement provides for an hourly rate in the event of a pre-contingency termination, it is presumptively enforceable, subject to the ordinary requirement of reasonableness. *Id.* at 862 (citing Ind. Rule of Prof. Conduct 1.5). In the absence of such an agreement, compensating the predecessor lawyer on a standard hourly fee could result in over or under payment, "depending on how the total hourly efforts of all lawyers compare to the contingency fee." *Id.* The fact finder may also consider the "general quality of the effort expended by the attorney" compared with the benefit received by the client. *Id.* The *quantum meruit* amount "is the portion of the contingent fee equal to the total effort expended to achieve the contingency that is attributable to the predecessor's work." *Id.* Because this analysis seeks to determine the equitable amount that Mr. Conour and the Conour Firm are entitled to receive as prior counsel, Defendants may assert any arguments or defenses in determining those amounts that it would have asserted had ACF not taken a security interest in the

accounts. ACF may only recover what Mr. Conour and the Conour Firm have a right to receive, and those rights may be limited by the factual circumstances of each of the Subject Cases.

**B.       Priority of Intervenor's Claims[2]**

ACF's motion for summary judgment and the Intervenors' cross-motion for partial summary judgment seek a determination of the priority of the Intervenors' claims against Mr. Conour and the Conour Firm. The Intervenors argue that ACF's security interest is invalid, and if it is valid, their interests take priority over ACF's security interest. Both ACF and Defendants argue that the Intervenors do not have standing to claim any portion of the attorney fees to which Mr. Conour or the Conour Firm may be entitled.[3]

The Intervenors' argument that ACF has not shown that it has a valid security interest in the Collateral is unavailing, and does not serve to create a dispute of material fact defeating summary judgment. The Intervenors argue that Advocate did not assign its rights under the Loan Agreement to ACF because it failed to create a written assignment agreement. While it is true that a written security agreement is required in order to create a valid security interest, *see* I.C. § 26-1-9.1-203/Tenn. Code Ann. § 47-9-203, Intervenors do not cite to any authority in the UCC that requires an assignment to be in writing. The cases cited by Intervenors relate to the perfection and priority of a security interest, not its creation or assignment. ACF has submitted the declaration

---

[2] Intervenors have also moved to strike ACF's Response to Cross-Motion for Partial Summary Judgment (Filing No. 81) on the basis that it is procedurally improper. The Courtroom Procedures and Trial Practice entry sets forth the procedure for a party to respond to a cross-motion for summary judgment, stating that the reply in support of motion and response in opposition to cross motion should be contained in a single brief in order to avoid simultaneous "mirror image" briefs. Filing No. 38, at ECF p. 4. ACF, in its reply in support of its motion for summary judgment (Filing No. 75), addressed the Intervenors' arguments raised in their cross-motion for summary judgment, thus an additional response to the cross-motion was unnecessary and redundant. ACF's Response to Cross-Motion for Partial Summary Judgment (Filing No. 81) is hereby **STRICKEN**, and the Court will not consider any of the arguments or exhibits attached to the brief.

[3] Intervenors do not dispute that neither they nor ACF is entitled to an amount greater than the *quantum meruit* recovery from the Subject Cases.

of one of its and Advocate's officers, based upon his personal knowledge, stating that the assignment did take place and that ACF is the successor in interest to Advocate with respect to the Loans, the Loan Agreements and the Guaranties. Filing No. 61, at ECF p. 4. This is further supported by the amendment to the financing statement changing the secured party of record from Advocate to ACF. Filing No. 61-4, at ECF p. 13. ACF has satisfied the requirements of Federal Rule of Civil Procedure 56(c)(4) by supporting its motion with a declaration made on personal knowledge and has shown that the declarant is competent to testify on the matters stated. Intervenors have provided no evidence, beyond their own speculation, that no assignment occurred. The Court is not persuaded by Intervenors' argument that ACF has no standing to enforce the Loan Agreements.

The Intervenors' Complaint claims that the Intervenors are entitled to recovery under the Federal Court Restitution Order, as well as under judgments in favor of the Beals and the Condons. (Filing No. 55, at ECF p. 2.) With respect to Intervenors' attempt to enforce the liens established by the criminal Restitution Order, the Court agrees with ACF and Defendants that the Intervenors lack standing to enforce this order. Under 18 U.S.C. § 3613(f), only the United States may enforce a federal Restitution Order and collect the restitution award. No party other than the United States is authorized to record or enforce the Restitution Lien, which was recorded on April 15, 2014. (Filing No. 61-6.) Therefore, the Restitution Order cannot form the basis for the Intervenors' requested relief in this action.

With respect to the judgments, only the Beals had a valid judgment against Mr. Conour and the Conour Firm at the time the Intervenors filed their Complaint. The Condons had only filed claims against Mr. Conour and the Conour Firm, stating that the claims would "shortly be reduced to a Judgment in the amount of the Condon funds held by Conour . . . ." Filing No. 55, at ECF p.

2. A party cannot seek to enforce a judgment that does not yet exist. *See Citizens for Appropriate Rural Roads, Inc. v. Foxx*, 14 F. Supp. 3d 1217, 1229 (S.D. Ind. 2014) ("A claim is not ripe for adjudication if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all."). Although the Condons did obtain a judgment subsequent to the filing of their Complaint, the Intervenors did not amend their Complaint to reflect this occurrence. Thus, the only valid judgment under consideration by this Court is the Beals' judgment.

The Intervenors ask the Court to determine the priority of the claims of ACF, the Beals, and the Condons, as well as a collection and distribution of such funds according to the Court's determination of priorities. The Court finds that the Beals' judgment does not take priority over ACF, and is also subordinate to the Restitution Lien. First, both ACF and the United States have a perfected security interest in Mr. Conour's and the Conour Firm's property, and there is no evidence that the Beals' judgment was reduced to a lien or recorded, which is necessary to perfect a security interest. *See* I.C. § 26-1-9.1-310 ("[A] financing statement must be filed to perfect all security interests and agricultural liens."). "A perfected security interest is . . . superior to a judgment obtained against the debtor, 'especially where that judgment arose subsequent to perfection of the security interest and where that judgment had not been further enforced by an execution or levy upon the judgment debtor's property.'" *Fifth Third Bank v. Peoples Nat. Bank*, 929 N.E.2d 210, 215 (Ind. Ct. App. 2010) (quoting *Joseph Stephens & Co., Inc. v. Cikanek*, 588 F.Supp.2d 870, 873 (N.D. Ill. 2008)). ACF has a perfected security interest dating back to Advocate's original financing statement filing date of January 28, 2008, as reflected in the amended financing statement dated August 9, 2013, showing ACF as the secured party of record. *See* I.C. § 26-1-9.1-514(b). The United States entered the Restitution Order on October 28, 2013, and recorded the Restitution Lien on April 15, 2014. The Beals did not obtain their damages

judgment until April 21, 2014. Because the Beals' judgment arose after the perfection of ACF's and the United States' security interests, their interests are subordinate to these two secured creditors. *Fifth Third Bank*, 929 N.E.2d at 215 ("[A] security interest perfected prior to entry of a judgment trumps the rights of an unsecured judgment creditor.").

The Intervenors attempt to raise a claim under Ind. Code § 30-4-3-22(b), arguing that they were granted an equitable lien at the time Mr. Conour converted their trust funds back in 1999. The Intervenors did not raise this claim in their Complaint, and are attempting to alter their claims for the first time at summary judgment. In fact, their brief in support of their cross-motion for summary judgment states "Intervenors are not asserting a claim based upon the Criminal Court Restitution Lien, of which the Intervenors are beneficiaries." Filing No. 71, at ECF p. 20. This is directly contrary to their Complaint, in which they specifically mention that the Federal Court Restitution Order established a lien in their favor, and they are seeking satisfaction of their liens and judgments. Filing No. 55, at ECF p. 3. There is no mention of an equitable lien in the Intervenors' Complaint. "A plaintiff cannot add additional claims through arguments made in opposing summary judgment." *Messner v. Calderone*, 407 F. App'x 972, 974 (7th Cir. 2011). The Court will not permit the Intervenors to amend their Complaint through the summary judgment process, and therefore finds that this claim is not validly before the Court.

Because the Condons did not have a valid judgment at the time the Intervenors filed their Complaint, and because the Beals' judgment does not have priority over ACF's perfected security interest in the collateral, the Court finds that the Intervenors may not enforce their judgments in this action, and here, their claims must be dismissed.[4]

---

[4] As noted previously, Intervenors are members of the victims Restitution Fund and as such are entitled to receive damages compensation through the Restitution Lien.

### C. Claims against Mr. Hammond and Cohen & Malad

Mr. Hammond and Cohen & Malad did not respond to ACF's motion for summary judgment. However, Mr. Hammond only represented a client in one matter from the Conour Firm, and the parties have already reached an agreement as to the portion of the fees in the Marks Case that will be paid to ACF. *See* Tenn. Code Ann. § 47-9-607(a). ACF's settlement with Cohen & Malad and Mr. Hammond regarding the Marks Case is authorized and enforceable under Section 9-607(a) of the UCC, which affords ACF the right to settle and compromise claims of Mr. Conour and the Conour Firm with respect to the Conour Firm Cases. See Ind. Code § 26-1-9.1-607, Official Comment 9; Tenn. Code Ann. § 479-607, Official Comment 9. The Court will issue an appropriate judgment at the appropriate time.

### IV. CONCLUSION

For the reasons set forth above, the Court finds that ACF's security interest is limited to the *quantum meruit* portion of the fees recovered by Mr. Devereux and the Ladendorf Firm in the Subject Cases, subject to any defenses that Defendants may have been able to assert against Mr. Conour and the Conour Firm in calculating their equitable share of the attorneys' fees. The determination of the amounts payable to ACF as a secured creditor of Mr. Conour and the Conour Firm are factual determinations that must be made at trial. Further, the Court finds that the Intervenors do not have standing to enforce the Restitution Order, and that the Beals are unsecured creditors of Mr. Conour and the Conour Firm whose claims are subordinate to ACF and the Restitution Order.

Therefore, Mr. Devereux's and the Ladendorf Firm's Motion for Summary Judgment (Filing No. 63) is **GRANTED**. ACF's Motion for Summary Judgment (Filing No. 59) is **DENIED**

**in part** with respect to the claims against Mr. Devereux and the Ladendorf Firm, and **GRANTED in part** with respect to Mr. Conour, the Conour Firm, the Intervenors, Mr. Hammond, and Cohen & Malad. The Intervenors' Cross-Motion for Partial Summary Judgment ([Filing No. 70](#)) is **DENIED** and their Complaint ([Filing No. 55](#)) is **DISMISSED**. The Intervenors' Motion for Leave to File Amended Complaint ([Filing No. 88](#)) is also **DENIED**.

Recognizing that the parties have filed their final witness and exhibit list, ([Filing No. 107](#), [Filing No. 113](#)) the parties have until February 6, 2015 to make any amendments to their lists. The final pretrial conference will be held as scheduled on February 11, 2015.

**SO ORDERED**.

Date: 01/30/2015

Hon. Tanya Walton Pratt, Judge
United States District Court
Southern District of Indiana

DISTRIBUTION:

Christopher Charles Hagenow
BLACKWELL, BURKE & RAMSEY, P.C.
chagenow@bbrlawpc.com

Austin L. McMullen
BRADLEY ARANT BOULT CUMMINGS, LLP
amcmullen@babc.com

Roger G. Jones
BRADLEY ARANT BOULT CUMMINGS, LLP
rjones@babc.com

Gregory L. Laker
COHEN & MALAD LLP
glaker@cohenandmalad.com

Jeffrey Allen Hammond
COHEN & MALAD LLP

jhammond@cohenandmalad.com

Mark C. Ladendorf
LADENDORF & LADENDORF
mark@ladendorf.com

Timothy Francis Devereux
LADENDORF & LADENDORF
tim@ladendorf.com

Debra H. Miller
MILLER & FISHER LLC
miller@millerfisher.com

James R. Fisher
MILLER & FISHER LLC
fisher@millerfisher.com