UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| ACF 2006 CORP., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:13-cv-01286-TWP-DML |
| | ) | |
| WILLIAM F. CONOUR *Clerk's Entry of Default Entered 11/18/2013*, CONOUR LAW FIRM, LLC *Clerk's Entry of Default Entered 11/18/2013*, MARK C. LADENDORF ATTORNEY AT LAW, P.C., TIMOTHY F. DEVEREUX, COHEN & MALAD, LLP, *dismissed 03/09/15* and JEFFREY A. HAMMOND, *dismissed 03/09/15* | ) ) ) ) ) ) ) ) ) ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| V. | ) | |
| | ) | |
| DAVID L. BEALS, SR., *dismissed 01/30/15*, LORETTA BEALS, *dismissed 01/30/15*, KRISTEN BEALS by her Guardians DAVID L. BEALS, SR. and LORETTA BEALS, *dismissed 01/30/15*, SARA J. SKELTON (MASTERSON) individually and as Personal Representative of the Estate of MICHAEL CONDON, *dismissed 01/30/15*, and ZACKERY CONDON, *dismissed 01/30/15*, | ) ) ) ) ) ) ) ) ) | |
| Intervenors. | ) | |

**FINDINGS OF FACT AND CONCLUSIONS OF LAW
FOLLOWING BENCH TRIAL MARCH 9-10, 2015**

This matter was before the Court for a bench trial held on March 9 and 10, 2015, between Plaintiff ACF 2006 Corp. ("ACF"), and Defendants Mark C. Ladendorf Attorney at Law, P.C. (the "Ladendorf Firm"), and Timothy F. Devereux ("Mr. Devereux"). The issue for trial was the

*quantum meruit* allocation of fees between the Conour Law Firm and the Ladendorf Firm, and the resulting determination of amounts payable to ACF as a secured creditor of the Conour Law Firm. Having heard testimony and considered the exhibits and arguments of counsel, the Court issues its findings of fact and conclusion of law pursuant to Federal Rule of Civil Procedure 52.

## I.   FINDINGS OF FACT

The claims in this case arose following the conviction of William F. Conour ("Mr. Conour"), a once-prominent personal injury and wrongful death attorney in the Indiana legal community, for fraudulent misappropriation of client funds. ACF is a Tennessee corporation and successor in interest to Advocate Capital, Inc. ("Advocate"). Advocate provides case expense finance and working capital loans to law firms. Under various Loan Agreements, Advocate provided Mr. Conour and Conour Law Firm, LLC (the "Conour Firm") with loans for operating expenses ("Loans") for the firm. Mr. Conour and the Conour Firm granted Advocate a continuing security interest in various items of collateral, including future revenue owed to the Conour Firm arising out of various personal injury actions being handled by the Conour Firm (the "Collateral"), as well as person guaranties ("Guaranties"). Advocate perfected its security interest in the Collateral by filing Uniform Commercial Code ("UCC") financing statements with the Indiana Secretary of State's office. In 2013, Advocate assigned its interest under, in and to the Loans, the Loan Agreements and the Guaranties to ACF, and an amended filing statement was filed with the Indiana Secretary of State on August 9, 2013.

The Loans matured and became due and payable in full on January 18, 2012. Despite the Loans having matured, Mr. Conour and the Conour Firm failed or refused to pay the unpaid principal, interest, administrative fees, legal fees and expenses owed under the Loan Agreements and the Guaranties. ACF demanded payment of the Loans and that Mr. Conour and the Conour

Firm hold all of the Collateral in trust for the benefit of ACF. As of the date of the March 9, 2015 bench trial, ACF calculated the total amount of indebtedness owed by Mr. Conour and the Conour Firm to be approximately $750,000.00.

The Conour Firm specialized in construction accident cases. Ninety percent of the Conour Firm's cases were referrals and the primary referral sources were the Keller & Keller Law Firm ("Keller & Keller") and the Ken Nunn Law Firm ("Ken Nunn"). In 2008, Mr. Conour advertised for an experienced litigation associate. Mr. Devereux responded to the advertisement, was hired and then relocated to Indianapolis, Indiana to become an employee of the Conour Firm beginning February 2008.

Mr. Devereux ended his employment with the Conour Firm on December 22, 2011, and became an employee of the Ladendorf Firm. Clients in twenty-one separate personal injury contingency fee matters chose to end their relationship with the Conour Firm prior to the resolution of their cases and establish a new contingency fee relationship with Mr. Devereux and the Ladendorf Firm in order to continue pursuing their cases. All twenty-one cases were being handled by the Conour Firm based on Mr. Conour's reputation and relationship with the referring attorneys. Of those twenty-one cases, six were resolved without recovery. Of the remaining fifteen cases, ACF agreed to waive its claim for attorney's fees and expenses on four of those cases, and elected to enforce its security interests in the following cases: 1) C.A.; 2) R.W.; 3) J.C.; 4) R.S.; 5) D.N.; 6) L.B.; 7) J.B.; 8) J.Bk.; 9) B.C.; 10) M.B.; and 11) N.E. (the "Subject Cases").[1] All of the Subject Cases have settled with the exception of the N.E. Case, which was still pending at the time of trial.

---

[1] The clients in these cases are referred to only by their initials pursuant to a protective order approved by the Court. (Filing No. 102-1; Filing No. 105).

Mr. Devereux was the attorney that served as lead trial counsel on the Subject Cases both while employed at the Conour Firm and at the Ladendorf Firm. After commencing his employment at the Ladendorf Firm, Mr. Devereux requested the case files for the Subject Cases from the Conour Firm once the clients in the Subject Cases became represented by the Ladendorf Firm. All of the Subject Cases were subject to a 40% contingency fee arrangement with the Ladendorf Firm, with the exception of the J.B. Case which was subject to a 33.3% contingency fee agreement. Case expenses were to be paid from the clients' portion of any recovery, not from the attorney's fee recovery portion of the recovery.

In addition to the contingency fee agreements, the Conour Firm and the Ladendorf Firm also entered into referral, or co-counsel agreements, with either the law firms of Keller & Keller or Ken Nunn on all of the Subject Cases, with the exception of the C.A. Case. No evidence was provided showing the specific terms of the referral/co-counsel agreements, and there is no indication as to whether these agreements complied with Indiana Rule of Professional Conduct 1.5(e)[2]. In addition, neither Keller & Keller nor Ken Nunn were made parties to this action.

The Court finds that the following work was performed by the Conour Firm and the Ladendorf Firm in each of the Subject Cases:[3]

1)  **R.S. Case**

The R.S. Case was a products liability case involving the death of a child resulting from an allegedly defective bunk bed design. The Conour Firm did the initial case intake and filed the

---

[2] Indiana Rule of Professional Conduct 1.5(e) provides that a division of a fee between lawyers who are not in the same firm may be made only if: 1) the division is in proportion to the services performed by each lawyer or each lawyer assumes joint responsibility for the representation; 2) the client agrees to the arrangement, including the share each lawyer will receive, and the agreement is confirmed in writing; and (3) the total fee is reasonable.

[3] Mr. Devereux served as lead counsel on all of the Subject Cases while working at both the Conour Firm and the Ladendorf Firm. For the sake of clarity, work done by Mr. Devereux will be referenced by the name of the firm at which he was employed at the time the services were rendered.

complaint. The Conour Firm engaged in third-party discovery, including obtaining medical records, the police investigation file, Consumer Product Safety Commission incident reports, and testing documents from Diversified Testing Lab. (Tr. Ex. 190, 200, 202, 203, 210, 211.) The Conour Firm prepared for and attended the depositions in the case, including both party and third-party depositions. (Tr. Ex. 190, 198, 199.) The Conour Firm also worked on a discovery dispute involving the Department of Children's Services; filed multiple amended complaints to add defendants; and filed preliminary witness and exhibit lists. (Tr. Ex. 190.) The Conour Firm also engaged an expert witness, Shelley Deppa ("Ms. Deppa"), who performed several hours of work and produced a draft preliminary opinion that was provided to the attorneys in the case. (Tr. Ex. 197.) The Conour Firm settled with one of the defendants in the R.S. Case, Homeline Industries, for $20,000.00, and retained the entire settlement amount to purportedly cover the expert witness fees, attorney's fees, and expenses. However, the Conour Firm did not pay the entire amount owed to the expert. (Tr. Ex. 193.)

After the Ladendorf Firm took over the R.S. Case, they did not conduct any additional discovery, did not re-engage the previously hired expert to do additional work by paying the outstanding balance owed for her services, and did not engage a new expert in the case. The R.S. Case was fully prepared and ripe for settlement when it was handed off from the Conour Firm to the Ladendorf Firm. Shortly after acquiring the case, the Ladendorf Firm settled the R.S. Case with the remaining defendants at mediation for $500,000.00. The Ladendorf Firm had a 40% contingency fee agreement with the clients, thus the total attorney's fee in the case was $200,000.00.

    **2) L.B. Case**

The L.B. Case was a product liability matter involving a defective gear puller that failed

and caused traumatic brain injury to the client. The case was originated by the Ladendorf Firm, but was referred to the Conour Firm under a co-counsel agreement.[4] The Conour Firm filed the complaint in the Bartholomew Superior Court, but it was removed to federal court by the defendant, SPX Corporation, in March 2011. The Conour Firm served and responded to written discovery, and engaged in and reviewed third-party discovery. The Conour Firm prepared the Statement of Damages and Settlement Demand as ordered by the District Court. The Conour Firm retained an expert, Dr. Alan Johnson ("Dr. Johnson"), and spent several hours observing the location of the incident and performing a visual inspection of the gear puller, which was still in the possession of the defendant. Dr. Johnson worked with the Conour Firm to begin drafting the destructive testing protocol for the gear puller. The Conour Firm took two depositions, and obtained physical custody of the subject gear puller the day before Mr. Devereux resigned. The firm incurred $2,959.23 in expenses.

After the Ladendorf Firm engaged the client in the L.B. Case, the firm deposed an expert and the plaintiff. The Ladendorf Firm worked on finalizing the destructive testing protocol and scheduled the testing on the gear puller. The Ladendorf Firm engaged in trial preparation, including the filing of a *Daubert* motion. The case ultimately settled at mediation for $3,550,000.00, resulting in a total attorney's fee of $1,390,000.00.

3) **J.Bk. Case**

The J.Bk. Case involved a construction site accident in which the plaintiff became entangled in a spinning auger and sustained major injuries to his lower extremities. The case was

---

[4] There was a discrepancy as to the amount of the fee that would have been owed to the Ladendorf Firm for referring the case to the Conour Firm. The Ladendorf Firm and the Conour Firm originally discussed dividing the liability and damages portion of the case, but then decided in an e-mail correspondence to a 25% referral fee with no involvement in the case by the Ladendorf Firm. This latter type of referral is known as a "straight referral," which Mr. Devereux admitted in his testimony is not allowed under the Indiana Rules of Professional Conduct. However, as the Court is not addressing the allocation of co-counsel/referral fees in this action, this determination does not need to be made.

referred to the Conour Firm by Keller & Keller, and the Conour Firm met with the client while he was still in the hospital. The Conour Firm filed the complaint and sent interrogatories and requests for production to the defendant. The Conour Firm prepared and filed preliminary witness and exhibits lists, filed a motion for protective order and to quash subpoena, and responded to discovery requests and supplemented discovery responses. The firm incurred $815.69 in expenses.

After the Ladendorf Firm took over the case in January 2012, the firm took twenty depositions and analyzed over 100,000 pages of documents that had been produced to the Conour Firm. The Ladendorf Firm performed a site visit to inspect and videotape the paving machine in use; drafted pre-trial motions, trial briefs, jury instructions and verdict forms; prepared demonstrative presentations for trial; and attended a final pretrial conference. The J.Bk. Case settled the evening before the trial for $1,265,000.00, resulting in a gross attorney's fee of $506,000.00.

**4) D.N. Case**

The D.N. Case involved a worksite accident in which the plaintiff fell from the attic to the basement of a home that was being remodeled due to the failure of a set of pull-down attic stairs, resulting in severe spinal cord and orthopedic back injuries. The case was referred to the Conour Firm by Keller & Keller. The Conour Firm filed the complaint and issued a set of discovery requests and obtained the plaintiff's medical records. Preliminary witness and exhibits lists were also filed by the Conour Firm. The Conour Firm incurred $585.24 in expenses.

After the D.N. Case was taken over by the Ladendorf Firm, Mr. Devereux obtained access to and performed an inspection of the stairs involved in the incident. The Ladendorf Firm retained expert witnesses and took at least seven depositions. The Ladendorf Firm drafted a demand letter

and prepared a PowerPoint presentation for the mediation held on March 19, 2013. The D.N. Case settled at mediation for $850,000.00, resulting in an attorney's fee of $340,000.00.

### 5) C.A. Case

The C.A. Case involved a workplace accident in which the plaintiff was knocked off a ladder while doing work at Riley Children's Hospital. The Conour Firm filed the complaint, engaged in written discovery, including obtaining the client's worker's compensation file, and reviewed documents produced by the defendant. The Conour Firm hired an investigator who interviewed witnesses to the accident. The Conour Firm incurred $951.30 in expenses.

After taking over the case, the Ladendorf Firm deposed the plaintiff and researched OSHA regulations. The case settled at mediation in March 2012 for $40,000.00, resulting in an attorney's fee of $16,000.00.

### 6) R.W. Case

The R.W. Case involved injuries resulting from a fall from drywall stilts while the plaintiff was performing construction work at the J.W. Marriott Hotel in Indianapolis. The Conour Firm filed the complaint and engaged in written discovery, including sending interrogatories and requests for production. The Conour Firm also took one deposition. The Conour Firm incurred $399.10 in expenses.

The Ladendorf Firm deposed the plaintiffs and prepared two demand letters after taking over the case. The case settled at mediation for $60,000.00, resulting in an attorney's fee of $24,000.00.

### 7) J.C. Case

The J.C. Case involved a worksite accident in which the client fell onto exposed rebar in the basement of the NCAA headquarters building. The Conour Firm filed the complaint and served

and responded to written discovery. There was no evidence presented regarding any expenses incurred by the Conour Firm.

The plaintiff was deposed by the Ladendorf Firm after the firm took over the case, and the case settled at mediation for $34,000.00. The attorney's fee from the J.C. Case was $13,600.00.

### 8) J.B. Case

The J.B. Case involved injuries sustained by the plaintiff when the ladder he was working on slipped out from underneath him, causing him to fall. The Conour Firm filed the complaint and issued interrogatories to the defendant. The Conour Firm failed to respond to defendants' discovery requests, did not respond to a motion to compel, and never complied with the court's order on the motion to compel. The Conour Firm incurred $37.24 in expenses.

Upon taking over the case, the Ladendorf Firm had to address the Conour Firm's failure to respond to the discovery order. The Ladendorf Firm also took two depositions and defended the plaintiff's deposition; hired an independent medical examiner; and drafted a demand letter. The Ladendorf Firm participated in two mediations, the second of which resulted in a settlement of $24,000.00. The attorney's fee in the case was $7,992.00.

### 9) B.C. Case

The B.C. Case involved injuries sustained by the plaintiff when he was knocked from scaffolding by a falling crane. The Conour Firm filed the complaint, issued and responded to discovery requests, and took three depositions. The Conour Firm incurred a total of $1,153.13 in expenses.

The Ladendorf Firm reviewed the discovery in the B.C. Case, as well as the discovery from other related cases arising from the same incident. The Ladendorf Firm prepared the demand letter

and attended two mediations, the second of which resulted in a settlement of $67,500.00. The attorney fees were $27,000.00.

**10) M.B. Case**

The M.B. Case involved injuries sustained at a construction site when the plaintiff dropped steel decking from a mezzanine and cut his arm. The Conour Firm filed the complaint, served and responded to written discovery, and took two depositions. The defendant filed a motion for summary judgment while the plaintiff was represented by the Conour Firm, but no response was filed prior to the client terminating the relationship with the Conour Firm. The Conour Firm incurred $969.99 in expenses.

The Ladendorf Firm responded to the motion for summary judgment after taking over the case. Following a hearing on the motion, the trial court granted summary judgment in favor of the defendant. The Ladendorf Firm appealed the trial court's ruling, and the summary judgment order was reversed on appeal. The Ladendorf Firm prepared a demand letter and the case settled at mediation for $60,000.00. The gross attorney's fee was $24,000.00.

## II.   CONCLUSIONS OF LAW

**A.   Referral/Co-Counsel Fees Agreements with Non-Parties**

First, with respect to the allocation of attorney's fees under the terms of the purported referral/co-counsel agreements, the Court cannot take these agreements into account in determining the proper amount to be awarded to ACF. While ACF stands in the shoes of the Conour Firm and is subject to any additional obligations or liens placed upon the Collateral, this issue was not properly placed before the Court because the other interested law firms—Keller & Keller and Ken Nunn —were not made parties to this action, thus it is impossible for the Court to

award any relief to these two firms under the terms of the purported referral/co-counsel agreements.

Second, the testimony presented at the trial and the stipulations filed by the parties gave conflicting accounts as to the terms of these agreements, which Mr. Devereux testified were "constantly changing." The parties' stipulation states that *both* the Conour Firm and the Ladendorf Firm owed "referral fees" to Keller & Keller or Ken Nunn for the same cases, not just the Conour Firm on the Subject Cases once they were referred by the non-party firms. (Filing No. 150-1.) This conflicts with the testimony provided at trial and with the calculations in the parties' respective Proposed Findings of Fact and Conclusions of Law. (Filing No. 142; Filing No. 144.) Additionally, evidence presented at trial included a letter from Mr. Conour to Jim Keller which states: "On all existing and future cases, we will now treat the case as a straight referral to our firm and we will handle the entire case, including all medical." (Tr. Ex. 315). Mr. Conour further writes that the fee split will remain 60% for the Conour Firm and 40% for Mr. Keller. Not only does this give the Court pause as to whether these attorneys properly complied with the Indiana Rules of Professional Conduct in making these agreements by informing the clients of the final allocation of fees, putting such agreements in writing, and ensuring the overall fees were reasonable in light of the work done by each firm, it also presents insufficient evidence from which the Court can make a determination as to the amounts that may be owed to these non-parties and how these amounts were originally intended to be determined and paid. *See* Ind. R. of Prof. Conduct 1.5(e).

The Court concludes that the only reasonable and legally sound disposition of this case is to determine the *quantum meruit* share of the attorney's fees that would have been owed to the Conour Firm, and thus ACF, based upon the gross attorney's fees recovered in each of the Subject Cases, and the application and enforcement of any referral fee agreements will need to be

addressed amongst the parties and non-parties outside of this litigation. *See Galanis v. Lyons & Truitt*, 715 N.E.2d 858, 860 (Ind. 1999) ("[T]he fee is to be measured by the proportion of the *total fee* equal to the contribution of the discharged lawyer's efforts to the ultimate result.") (emphasis added). Whether the Conour Firm or the Ladendorf Firm complied with the Indiana Rules of Professional Conduct with respect to the proper documentation of the contingency fee and referral agreements does not impact ACF's entitlement to the Conour Firm's portion of the attorney's fees from the Subject Cases. *See Carr v. Pearman*, 860 N.E.2d 863, 874 (Ind. Ct. App. 2007) ("[A]n attorney may be entitled to *quantum meruit* recovery for his or her work despite the fact that the attorney has violated the Rules of Professional Conduct by failing to obtain a written contingency fee agreement."). In light of these factors, evidence of the referral/co-counsel fees will be disregarded by the Court in determining the *quantum meruit* portion of the fees to which ACF may be entitled.

**B.     ACF's Security Interest**

Article 9 of the UCC, as adopted by Indiana and Tennessee statutes, applies to the security interest asserted by ACF. Article 9 of the UCC applies to "a transaction, regardless of its form, that creates a security interest in personal property or fixtures by contract." I.C. § 26-1-9.1-109(a)(1); Tenn. Code Ann. § 47-9-109(a)(1).[5] A security interest may attach to "accounts," which the UCC defines as "any right to payment of a monetary obligation, whether or not earned by performance … for services rendered or to be rendered …." I.C. § 26-1-9.1-102(a)(2); Tenn. Code. Ann. § 47-9-102(a)(2). Courts have held that contingency fee contracts for legal services and fees

---

[5] The Loan Agreements are governed by Tennessee law, and therefore the issues of attachment, validity, and enforcement of ACF's security interest are governed by Tennessee law. *See* I.C. § 26-1-9.1-301, Official Comment 2; Tenn. Code Ann. § 47-9-301, Official Comment 2. However, while a debtor is located in a jurisdiction, the local law of that jurisdiction governs perfection, the effect of perfection or non-perfection, and the priority of a security interest in collateral. *See* I.C. § 26-1-9.1-301. Because both Tennessee and Indiana law are substantively similar, the outcome would be the same regardless of which law is applied.

12

pending in contingency fee cases are accounts for purposes of Article 9. *See In re: Holstein Mack & Klein*, 232 F.3d 611, 612 (7th Cir. 2000) (legal fees to be earned from personal injury and class action suits by law firm considered to be "receivables"); *ACF 2006 Corp. v. Merritt*, No. CIV-12-161, 2013 WL 466603, at *3 (W.D. Okla. Feb. 7, 2013) *aff'd,* 557 F. App'x 747 (10th Cir. 2014) ("Courts have uniformly held that contracts for legal fees, including fees in pending contingency fee cases, are accounts for Article 9 purposes.") (citing cases). However, because the Subject Cases were not transferred or assigned to the Ladendorf Firm, ACF only holds a valid security interest in the portion of the attorneys' fees recovered in the Subject Cases to which the Conour Firm would be entitled to under Indiana law, plus unreimbursed expenses incurred by the Conour Firm on each case.

C.     *Quantum Meruit* **Division of Attorney's Fees**

Under Indiana law, clients have an absolute right to the counsel of their choice. "A client has a right to discharge a lawyer at any time, with or without cause, subject to liability for payment for the lawyer's services." *Galanis*, 715 N.E.2d at 861 (quoting Indiana Professional Conduct Rule 1.16 comment). The liability for payment of the former lawyer's services has been held not to be the entire amount that would have been owed under the original contingency fee agreement, but rather the former attorney's portion of the total recovery based upon the amount of work he performed prior to the client's discharge. *Id.* The Supreme Court of Indiana has held "[t]he conventional rule is that '[a]n attorney who is employed under a contingent fee contract and discharged prior to the occurrence of the contingency is limited to *quantum meruit* recovery for the reasonable value of the services rendered to the client, and may not recover the full amount of the agreed contingent fee.'" *Id.* (quoting 7 Am. Jur. 2d *Attorneys at Law* § 181 (1997)). "Determining the proper value of the predecessor's services is ultimately a question of fact for the

trial court." *Nunn Law Office v. Rosenthal*, 905 N.E.2d 513, 520 (Ind. Ct. App. 2009). Thus, it is for the Court to determine the *quantum meruit* portion of the attorney's fees from the Subject Cases that are attributable to work done by the Conour Firm, which includes work done by Mr. Devereux while he was an employee of the Conour Firm, based upon the factual circumstances of each case.

The value of the Collateral to which ACF may be entitled to is based upon the percentage of work that each firm performed on the Subject Cases, as well as the amount of expenses that the Conour Firm incurred in each case. The Court will not factor in the expenses incurred by the Ladendorf Firm, as Mr. Devereux testified that these amounts were deducted from the clients' share of the settlement recovery, and thus should not be deducted from the gross attorney fee. In addition, the Court will not consider the referral fees alleged to be owed to Keller & Keller and Ken Nunn, as the *quantum meruit* calculation is based upon the total fee recovery under *Galanis*, not the net fees remaining after deducting the referral fees. Based upon the testimony and evidence presented at the trial and this Court's findings of fact, the Court finds that ACF, as a secured creditor of Mr. Conour and the Conour Firm, is entitled to the following on each of the Subject Cases:

**1) R.S. Case**

The Court finds that the *quantum meruit* share of the attorney's fee recovered in the R.S. Case is to be allocated 60% to the Conour Firm and 40% to the Ladendorf Firm. The Court finds that the majority of the substantive legal work was performed by the Conour Firm in this case, however, the Court is taking into account the fact that Mr. Conour and the Conour Firm had already reached a settlement with one of the defendants for $20,000.00, prior to the Ladendorf Firm taking over the case, and had retained the entire amount as "fees and expenses." Thus, the Conour Firm has already been partially compensated for its work on the case. In addition, settlement with one

defendant prior to settlement with the other defendants possibly damaged the total settlement value of the case, and therefore, may have compromised the quality of representation. *See Galanis*, 715 N.E.2d at 862 ("[C]onsideration may be given to the general quality of the effort expended by the attorney.") (quoting *Kizer v. Davis*, 369 N.E.2d 439, 446 n.9 (1977)).

The Ladendorf Firm also argues that that Mr. Conour's failure to pay the outstanding balance on the expert witness's invoice damaged the case; however, on this issue the Court is not persuaded. Mr. Devereux testified that he was able to settle the case without the need for an expert, and that he made no attempt to pay Ms. Deppa's invoice to keep her working on the case. This would have been a case expense that could have been taken from the client's portion of the recovery, but the Ladendorf Firm did not believe an expert was necessary in order to resolve the case. The Conour Firm's expenses were already paid from the Homeline Industries settlement, and there is no evidence the Conour Firm incurred any additional case expenses. Therefore, based upon a gross attorney's fee recovery of $200,000.00 the Court concludes that ACF is entitled to an award of $120,000.00 for the R.S. Case.

   **2) L.B. Case**

Based upon the work performed in the L.B. Case, the Court finds that the *quantum meruit* share of attorney's fees earned by the Conour Firm is 40%, and the Ladendorf Firm's share is 60%. This is based upon the fact that the Conour Firm engaged in discovery, hired an investigator to interview witnesses, took two depositions, inspected the facility, obtained the defective part at issue, began developing the destructive testing protocol, and prepared the settlement statement and the demand letter. These actions provided significant benefit to the client's case prior to being taken over by the Ladendorf Firm. Although the Ladendorf Firm performed a greater percentage of the work on the case to get it resolved, the *quantum meruit* allocation to the Conour Firm is

much greater than the 10% argued by the Defendants and less than the 66% argued by Plaintiff. Based upon a gross attorney's fee of $1,390,000.00, the Court finds that ACF is entitled to $556,000.00, plus incurred expenses of $2,959.23, for a total award of $558,959.23.

### 3) J.Bk. Case

Based upon the allocation of work done in the J.Bk. Case by each firm, the Court finds that the *quantum meruit* share earned by the Conour Firm is 10%, and the Ladendorf Firm's share is 90%. The Ladendorf Firm argues that the Conour Firm should only be entitled to a 5% share; however, the Court finds that the Conour Firm performed more discovery work than characterized by Mr. Devereux. The Conour Firm did not merely issue standard discovery requests, but also responded to discovery requests from the defendant and defended against improper discovery requests, and was able to obtain 100,000 pages of documents that were later used by the Ladendorf Firm. However, the Court acknowledges that the Ladendorf Firm performed a substantial amount of the work on the case. Based upon a gross attorney's fee of $506,000.00, the Court finds that ACF is entitled to $50,600.00, plus incurred expenses of $815.69, for a total award of $51,415.69.

### 4) D.N. Case

Based upon the work performed by the respective firms in the D.N. Case, the Court finds that the *quantum meruit* portion of the fee allocated to the Conour Firm is 5%, and the amount allocated to the Ladendorf Firm is 95%. The only work done at the Conour Firm was the filing of the complaint and sending out a standard set of discovery requests, preliminary witness and exhibits lists, and the firm did not take any depositions. Based upon a gross attorney's fee recovery of $340,000.00, ACF is entitled to $17,000.00, plus expenses incurred of $585.00, for a total of $17,585.00.

**5) C.A. Case**

The Court finds that the *quantum meruit* allocation of the attorney's fees recovered in the C.A. Case is 30% to the Conour Firm and 70% to the Ladendorf Firm. The Conour Firm performed a significant amount of preliminary work on the case, including engaging written discovery, reviewing discovery responses and hiring an investigator to interview witnesses, entitling the Conour Firm to more than 25% proposed by Defendants. Based upon a gross attorney's fee of $16,000.00, ACF is entitled to $4,800.00 in attorney's fees, plus $951.30 in expenses, for a total award of $5,751.30.

**6) R.W. Case**

The allocation of attorney's fees based upon the work done by the respective parties is 30% to Conour Firm and 70% to the Ladendorf Firm. This allocation is based upon the Court's finding that the Conour Firm engaged in written discovery and took a deposition, and is also consistent with the Ladendorf Firm's assertion that it should be entitled to 70% of the attorney's fee.[6] (Filing No. 142, at ECF p. 24.) Based upon a total fee recovery of $24,000.00, the Court finds that ACF is entitled to $7,200.00, plus expenses of $399.10, for a total of $7,599.10.

**7) J.C. Case**

Consistent with the Ladendorf Firm's assessment, the Court finds that the Conour Firm's *quantum meruit* share of the attorney's fee in the J.C. Case is 25%, and the Ladendorf Firm's share is 75%.[7] (Filing No. 142, at ECF p. 24.) Therefore, based upon a total fee recovery of $13,600.00, the Court finds that ACF is entitled to an award of $3,400.00.

---

[6] The Ladendorf Firm's proposed findings of fact states that there should be a 70/25% split between the Ladendorf Firm and the Conour Firm respectively; however, this allocation only equals 95%.

[7] The Ladendorf Firm's proposed findings of fact states that there should be an 80/25% split between the Ladendorf Firm and the Conour Firm respectively; however, this amount totals 105%.

### 8) J.B. Case

The allocation of the attorney's fee recovered in the J.B. Case, based upon the work done by the respective parties, is 5% to the Conour Firm and 95% to the Ladendorf Firm. The only work done by the Conour Firm on this case was the filing of the complaint and issuance of standard discovery requests. The Conour Firm did not respond to the defendant's discovery request, nor did it respond to a motion to compel that was filed as a result of this failure. The Ladendorf Firm had to address the problems caused by the Conour Firm's neglect of the case prior to engaging in discovery and other legal work that ultimately led to the case's favorable resolution. Therefore, the Court finds that the Conour Firm is entitled to $399.60, plus incurred expenses of $37.24, for a total of $436.84.

### 9) B.C. Case

The Court concludes that the *quantum meruit* allocation of attorney's fee in the B.C. Case is 20% to the Conour Firm and 80% to the Ladendorf Firm. The Conour Firm drafted and filed the complaint, both served and responded to written discovery, and took three depositions before the case was taken over by the Ladendorf Firm. However, the Ladendorf Firm performed a substantial amount of work due to the increased complexity of the case as a result of the simultaneous litigation of the related cases. Thus, based upon a gross fee recovery of $27,000.00 the Court finds that ACF is entitled to $5,400.00 in attorney's fees, plus $1,153.13 in expenses, for a total of $6,553.13.

### 10) M.B. Case

The Court concludes that the *quantum meruit* allocation of the attorney's fee in the M.B. Case is 10% to the Conour Firm and 90% to the Ladendorf Firm. The Conour Firm drafted and filed the complaint, served and responded to written discovery, and took two depositions.

However, the Ladendorf Firm performed a substantial amount of work by responding to and arguing against the motion for summary judgment filed by the defendant, and also appealed the ruling on the motion, ultimately settling the case at mediation. Therefore, based upon a gross attorney's fee recovery of $24,000.00, the Court concludes that ACF is entitled to $2,400.00 plus expenses of $696.99, for a total of $3,096.99.

    **11) N.E. Case**

Because the N.E. Case was still pending at the time of trial, the Court is unable to ascertain the *quantum meruit* portion of the attorney's fee allocable to the Conour Firm, nor is it even certain whether the plaintiff will recover any damages at mediation or trial. Therefore, the Court finds that this issue is not ripe for adjudication and is unable to determine if and to what amount ACF would be entitled.

### III. CONCLUSION

For the reasons set forth in the Court's Findings of Fact and Conclusions of Law, the Court finds that, based upon the *quantum meruit* division of the attorney's fees and expenses in the Subject Cases, ACF is entitled to a judgment in the amount of $774,797.28, which constitutes the amount of fees and expenses to which the Conour Firm would have been entitled to under Indiana law. Final judgment shall issue in an order separate from this Entry.

    **SO ORDERED.**

Date: 8/25/2015

                                       TANYA WALTON PRATT, JUDGE
                                       United States District Court
                                       Southern District of Indiana

DISTRIBUTION:

Christopher Charles Hagenow
BLACKWELL, BURKE & RAMSEY, P.C.
chagenow@bbrlawpc.com

Austin L. McMullen
BRADLEY ARANT BOULT CUMMINGS, LLP
amcmullen@babc.com

Roger G. Jones
BRADLEY ARANT BOULT CUMMINGS, LLP
rjones@babc.com

Gregory L. Laker
COHEN & MALAD LLP
glaker@cohenandmalad.com

Mark C. Ladendorf
LADENDORF & LADENDORF
mark@ladendorf.com

Timothy Francis Devereux
LADENDORF & LADENDORF
Tim@ladendorf.com

Debra H. Miller
MILLER & FISHER LLC
miller@millerfisher.com

James R. Fisher
MILLER & FISHER LLC
fisher@millerfisher.com